MILBURN v. PEOPLES BUILDING & LOAN ASSOCIATION.

Opinion delivered February 3, 1913.

MORTGAGE—DUTY TO INSURE—DAMAGES.—Plaintiff loaned defendant money to erect a building, with a provision in the mortgage that the mortgagor was to procure fire insurance on the property, with a right to mortgagee to do so if the mortgagor did not. The mortgagee procured the insurance with a three-fourths loss clause instead of a three-fourths value clause therein. The property was destroyed by fire. *Held*. In the absence of an agreement between mortgagee and mortgagor as to the kind of insurance to be placed on the property, that the mortgagee was entitled to recover from the mortgagor the amount of mortgagee's loan to mortgagor not realized from the insurance.

Appeal from Nevada Chancery Court; *Jas. D. Shaver*, Chancellor; affirmed.

*H. B. McKenzie*, for appellant.

*Thos. C. McRae, W. V. Tompkins* and *D. L. McRae*, for appellees.

SMITH, J.   The appellant, J. M. Milburn, owned a lot in the city of Prescott and desired to build a concrete business house thereon, and for that purpose borrowed from appellee the sum of two thousand dollars in April, 1906, and executed a mortgage on the property to secure the loan; and to guarantee the erection of the building thereon, according to certain plans and specifications, appellant executed a bond to appellee that this should be done, with Dr. Adam Guthrie and R. P. Arnold as sure-

ties. On June 9, 1909, before the completion of the building, it was partially destroyed by fire, and this litigation grows out of this circumstance, and the attendant difficulty of making settlement of this fire loss.

Milburn became embarrassed financially and was unable to complete the building and liens had been filed for labor and material, amounting to more than a thousand dollars, whereupon an arrangement was effected by which a receiver was appointed to take charge of the building and to complete it and sell it and pay the debts against it. At this sale, which occurred May 23, 1908, the appellant, R. P. Arnold, became the purchaser, and the sale was confirmed by the court on December 3, 1908, but no deed was ever made. Arnold did not pay the purchase price in one sum, but, acting for the receiver, paid the various claims against the building, charging them against the purchase price and apparently assuming the burdens of the situation, and with the receiver's co-operation and consent, paid all demands, except a balance of four hundred dollars claimed by the appellee.

By the fire, a loss of sixteen hundred dollars was sustained, and it was discovered that the fire insurance policy, under which the building was insured, contained a three-fourths loss clause instead of a three-fourths value clause, and thus on a settlement with the insurance company a loss of four hundred dollars was sustained and this litigation is to determine who should bear this loss.

This question was brought before the court for decision by a motion filed in the original foreclosure suit by appellee to require the receiver to collect the four hundred dollars and the interest thereon, still due it from the said Arnold, the purchaser at the sale. The matter was heard upon this motion and the response and intervention of the said Arnold, and the depositions of the parties, and the court dismissed the response and ordered the receiver to pay the four hundred dollars in accordance with appellee's motion, and the appeal was prayed from this order of the court.

The mortgage provided that the mortgagor should insure the property, and that upon his failure so to do the Building and Loan Association should procure the insurance at the borrower's expense. The secretary of this association was also an agent of the Planters Insurance Company, and as such wrote the insurance on the building, the first policy being dated September 19, 1906, and this insurance was renewed from year to year, the same kind of policy being written in each instance. The policy remained in the possession of the secretary of the Building and Loan Association, who testified that it was written in the name of the receiver, and that he had no knowledge of Mr. Arnold having purchased the property at the commissioner's sale. That he had no interest in the property, except to secure the balance that was due the association and that the object in taking out the insurance was to protect its claim against loss or damage by fire, and that the insurance was effected by three annual policies in the Planters Insurance Company, the first being written in the name of J. M. Milburn and transferred to the receiver. The secretary admitted having a conversation with Arnold about the insurance and having told him that it was insured, but he denies that there was any agreement to that effect, or that there was any understanding as to the kind of policy that should be written.

John H. Arnold, who was the attorney for the receiver, testified that he was notified by R. P. Arnold that he had been called upon to perform the condition of his bond and that he and R. P. Arnold went to Little Rock and saw the secretary of the association and agreed with him that he should write, or have written, a policy for the protection of all the interests involved, and that he made a memorandum of the amount, the rate, and the date, and he does not claim that he was misinformed as to either, except that it was understood that the policy was to be the best that could be had, and he testified that a three-fourths loss clause policy is not usually written on brick buildings.

The chancellor prepared a written opinion in the case in which he reviewed the facts and announced his finding therein and the views expressed by him accord with our own understanding of the case. Among other things, the chancellor said: ''It was the duty of the mortgagor to furnish insurance satisfactory to the plaintiff (appellee), and a failure to do so gave the plaintiff the right to have the insurance written. * * * There was no contract between the plaintiff and the mortgagor that the insurance policies were to contain either a three-fourths loss clause or a three-fourths value clause, the only restriction being that they were to be acceptable to the plaintiff. Under the original mortgage, there was nothing binding upon plaintiff to furnish insurance of any kind. It was merely a safeguard it required the mortgagor to take to strengthen the security it held. ''In the abesnce of a specific contract showing plaintiff agreed to have insurance written, carrying a three-fourths value clause for R. P. Arnold's protection, Arnold would have no claim upon plaintiff. The evidence fails to show such specific contract, and for that reason I am unable to find that Arnold has any claim for damages against the plaintiff.'' We concur in the above statements. The decree of the chancellor is affirmed.