DAHLHJELM GARAGES, INCORPORATED, *Respondent, v.*
MERCANTILE INSURANCE COMPANY OF AMERICA
*et al., Defendants,* PACIFIC FINANCE
CORPORATION, *Appellant.*[1]

[1]Reported in 270 Pac. 434.

*Bogle, Bogle & Gates, R. Kline Hillman,* and *Edward G. Dobrin,* for appellant.

*Chas. W. Johnson,* for respondent.

FULLERTON, C. J.—In this action, the respondent Dahlhjelm Garages, Inc., claiming that the appellant, Pacific Finance Corporation, had breached its contract to procure insurance upon a certain automobile, whereby the respondent had suffered a loss, brought this action to recover for the loss. The cause was tried in the court below while sitting without a jury, and resulted in a judgment in favor of the respondent for the amount demanded in the complaint.

In the main, the facts are not in dispute. The respondent was engaged in the business of renting for hire automobiles to persons who themselves desired to drive them. On June 23, 1925, it purchased under a contract of conditional sale, a Velie automobile from the Northwest Velie Co., a concern dealing in that make of automobile. The contract recited that the purchase price of the automobile was $1,735, to which was added $220.10, "to cover insurance and carrying charges," making a total purchase price of $1,955.10. It further recited an initial payment of $750, to be applied, first, to the payment of the insurance and carrying charges, and, second, to the payment of the purchase price. The balance of the purchase price, recited as $1,205.10, was divided into eighteen equal parts of $66.95 each, which were to be paid monthly, commencing with August 1, 1925. It was provided that all deferred payments should bear interest at the rate of 12% per annum after maturity. The contract con-

tained a number of conditions, the only ones of which that are material to be noticed are those found in the paragraphs numbered 2 and 4. The first of these provides that the buyer shall not use or permit the automobile to be used for hire. Paragraph 4 reads as follows:

"The Seller may keep said auto insured in a company or companies selected by Seller (with loss payable to Seller or Assigns as their interest may appear) against fire, theft, collision, wrongful conversion, confiscation and embezzlement, in an amount not less than the unpaid balance due on this contract, which said insurance shall be at the expense of the Buyer, and payment for the premium thereof shall be made at the time of signing this contract. In case of any damage to, or loss of said auto, either partial or total, all insurance money collected shall be retained by and belong to the Seller or Assigns; Provided, however, that the Seller shall credit any insurance collected (less any expense of collection) upon the unpaid balance due or to become due under this contract, and in the event there is any surplus, shall pay such surplus to the Buyer; or should the Seller or Assigns so elect, they may apply any insurance collected to the repair and restoration of said auto instead of crediting the same upon the Buyer's indebtedness. Failure of the Seller to keep said auto insured shall in no event relieve the Buyer from the obligation to purchase and pay for said auto according to the terms of this contract."

These clauses were a part of the printed portions of the contract, and the evidence makes it clear that the first did not express the true agreement between the parties. It was understood by the seller that the buyer desired to use the automobile in the business which it was conducting, namely, to use it for hire, and it entered into the contract with that understanding. When the subject of insurance came up, the buyer stated that it desired the automobile insured against fire, theft and collision and stated further that it de-

sired to procure the insurance itself as there were but few insurance companies that would insure automobiles when used for the purpose for which it used them, and that it wished to make sure that the insurance covered the property when subjected to that form of usage. The seller in effect said that it was not in a position to consent to such an arrangement; that it sold its contracts to a concern known as the Industrial Finance Company, and that the concern insisted upon placing the insurance in companies of its own selection. The buyer consented that the insurance might be so placed, and on the day of its execution the contract was assigned by the seller to the Industrial Finance Company, the seller at the same time paying over to the company the sum paid by the buyer to cover insurance and carrying charges.

The Industrial Finance Company, on the same day it received the assignment of the contract, insured the automobile in the full sum of the unpaid balance of the purchase price for a term of one year. Sometime thereafter, the precise date not appearing, but before the expiration of the year, it assigned the contract to the appellant, Pacific Finance Corporation. At the same time it delivered to the appellant the insurance policy, reciting that its interest therein had been satisfied, and directing that the loss, if any, be paid to the appellant.

When the policy expired, the appellant undertook to renew it, and did procure a policy insuring the automobile for a term of one year for "pleasure" uses. Some days later, the automobile met with a collision, while being used for hire, and was damaged. The insurance company last insuring the automobile, on the presentation of a claim for the damages, denied liability on the policy because the automobile was being used at the time it was damaged for purposes not per-

mitted by the policy. The action before us was instituted after the buyer had paid in full for the automobile.

The appellant has assigned a large number of errors. Since, however, many of these suggest the same question, we shall not notice them in the order in which they are presented in the printed arguments, but under an arrangement of our own.

The respondent's position, of course, is, that the seller of the automobile in its contract of sale undertook to keep it insured during the life of the contract up to the amount of the unpaid part of the purchase price against damage by collision, and that this obligation was assumed by the subsequent purchasers of the contract.

Against this position the appellant makes a number of contentions, the first of which is that it is contrary to the terms of the contract of conditional sale, which, as we have noticed, expressly provides that the automobile shall not be used for hire, and that the automobile was being so used at the time it was injured in the collision. But the record leaves no doubt that this clause of the contract was the result of a mutual mistake, and did not express the terms of the contract as agreed upon. The whole of the negotiations between the seller and the buyer leading up to the purchase of the automobile were had with the understanding that the automobile was to be used in the business of the buyer, which was that of renting automobiles for hire, and, more than that, the seller collected from the buyer at the time of the sale a sum in addition to the purchase price of the automobile, sufficient to keep it insured during the life of the contract as an automobile to be used for hire. As between the seller and the buyer, therefore, the contract was valid and enforcible.

■ It was likewise so as between the buyer and the first purchaser of the contract. It knew the terms of the agreement, and knew, of course, that the contract did not in this particular respect express the terms of the agreement. It, moreover, took the money paid in to procure such insurance, and actually caused the automobile to be insured for one year against damage by collision while being used as a car for hire. Clearly, we think, it cannot now be heard to say that it did not assume the obligation to keep the automobile insured during the life of the contract.

■ The question whether the appellant assumed the obligation to keep the automobile insured is of more difficulty. The evidence leaves uncertain the terms of the contract by which it obtained title to the contract, that is to say, whether it took over the entire business of the Industrial Finance Company and assumed its obligations, or whether it purchased it in its ordinary course of business. But, assuming the latter to be the true nature of the transaction, we still think it liable as against the objection that it did not assume the burden attached to it. It is the general rule, of course, that the assignment of a contract does not cast upon the assignee the liabilities imposed by the contract on the assignor. But the rule is not absolute. The assignee cannot enforce the contract against the other party thereto without performing, or showing a performance of, the obligations which the contract imposes. On the contrary, he takes the contract with all the burdens to which it was subject in the hands of his assignor, and if he undertakes to enforce it by action, it is a condition precedent to his right of recovery that he show that the conditions have been performed either by himself or by his assignor. In this instance, there was no action on the part of the appellant against the respondent to enforce the contract and the question whether the appellant per-

formed the obligations of the contract did not arise. But, at the time it acquired the contract, there were a large number of instalments yet due upon it, and these it collected from the respondent and applied them to its own use. The payments by the respondent were not thus voluntary. It paid them because the terms of its contract required their payment, and the appellant, in exacting and accepting them, assumed the corresponding duty to perform the conditions the contract imposed as a consideration for their payment. Having failed in the performance of this duty, it is liable for the damages the respondent suffered because of the failure.

The second objection is that the contract does not impose a mandatory duty to keep the automobile insured against injury by collision upon the appellant or its assignors. This objection has its foundation in the language used in the quoted part of the contract. It will be noticed that the language is that the seller may keep the automobile insured, not that it must do so. But it will be remembered that the seller exacted and was paid, in addition to the purchase price of the automobile, a stated sum for the very purpose of keeping it insured. If its obligation would have been otherwise optional, it became absolute when it made this exaction.

Again it is said that the amount of the insurance is indefinite and the requirement non-enforcible for that reason. But we do not so read the contract. The requirement is that it be kept insured "in an amount not less than the unpaid balance due on this contract," and the respondent at all times had the right to insist upon insurance to this amount. The precise amount of the insurance required at the time of the collision we need not inquire, as the evidence shows that the amount then due on the contract was greater than the damage suffered.

■ Another objection in this connection is that the respondent waived its right to claim damages for the breach of the condition to keep the automobile insured by paying the balance due on the contract after the collision occurred. But the respondent had at that time paid a goodly portion of the purchase price of the automobile. Title to the automobile had not then vested in it. The damages it claimed were unliqui-dated. It could not refuse to make the deferred payments without subjecting itself to the hazard of losing not only the automobile itself but the sums it had paid toward the purchase price. The appellant was aware of the respondent's claim at the times it received the deferred payments, and was in no manner deceived or misled to its injury. Under these circumstances, there was no waiver of the claim because of the payments.

■ The remaining objections relate to matters which, if sustained, would require a new trial. The first objection under this head is that the complaint does not state a cause of action. But there was at least in the complaint a defective statement of a good cause of action and the defects were amendable defects. Since the case was tried as if upon a sufficient complaint on which the parties were permitted to introduce all of their competent proof, under the rule of the statute, and the oft-repeated rule of this court, the complaint will be deemed amended to correspond with the proofs. Other objections go to the rulings of the court on the admission and exclusion of evidence, but we do not find that they require extended consideration. It is enough to say that we find no error in this respect.

The judgment is affirmed.

BEALS, MAIN, ASKREN, and HOLCOMB, JJ., concur.