BROYLES *v.* INTERNATIONAL HARVESTER COMPANY.

4-6303                                   150 S. W. 2d 733

Opinion delivered April 21, 1941.

268

*Kaneaster Hodges* and *Paul K. Holmes, Jr.*, for appellant.

*Pickens & Pickens*, for appellee.

SMITH, J. International Harvester Company, hereinafter referred to as the company, brought suit in replevin to recover possession of a motor truck which it alleged had been sold April 22, 1939, to defendant Broyles under a contract reserving title until the purchase price was paid. It was alleged that the sale price of the truck was $716, and that a balance of $276.40 remained unpaid. An order of delivery was served upon Broyles who gave bond as provided by statute for the retention of possession of the truck.

A verdict was directed in favor of the plaintiff, on which judgment was pronounced, from which is this appeal. Inasmuch as the verdict was returned against defendants under the direction of the court we must, in reviewing that action, state the testimony in terms most favorable to appellant.

When so viewed, the testimony is to the following effect. One E. B. Taylor had purchased the truck from the company, and had executed a title retaining contract which authorized the company to procure collision insurance and to charge the premium therefor to Taylor's account. This insurance had been taken out and charged to Taylor's account. In addition to the balance due on the truck, Taylor had another account with the company for farm machinery.

Broyles purchased the truck from Taylor, and gave Taylor a check for $120, which was intended by Broyles to be applied on the purchase price of the truck. The check was drawn in favor of the company, and was delivered to it by Taylor. Of the proceeds of the check $60 was credited to the balance then due on the truck, which was then $776, and $60 was credited on Taylor's farm account.

A new contract was executed, having the caption, "Order for Second-Hand Goods." This contract recited "Resale of E. B. Taylor repossessed truck." The truck had not, in fact, been repossessed, but the contract treated it as having been repossessed and evidences a resale for the consideration of $716, the balance of the original purchase price due by Taylor after allowing the $60 credit. Broyles insists that the $60 credit to Taylor's farm account should be credited to the balance due on the purchase price of the truck, for the reason that there was no intention on his part to pay anything on Taylor's farm account.

The court disallowed this credit and treated the contract of resale as a note with reservation of title to the truck. In holding that Broyles was not entitled to this credit the court said: "Gentlemen of the jury, this is a suit instituted by the International Harvester Company,

the plaintiff, against Owen H. Broyles. The suit is based on a note, a retention of title note, for a truck which the defendant purchased from the plaintiff, International Harvester Company, on the 22nd day of April, 1939. The note was given for the balance of the purchase price of $716. In connection with this the defendant gave an order for the purchase of the truck in question and also executed this particular note on which this suit is based for this balance of $716. Certain testimony has been introduced here by the defendant to the effect that there should have been a $60 credit on this note made back on the 1st of April, 1939, several days prior to the purchase of the truck from the plaintiff and the execution of the note. It is the view of the court that if this purchase price of $716 was not correct, that the defendant should have had it corrected, in his purchase price contract and also in his note. In other words, if there is any amount owing prior to that time, it would be merged into this written contract and he would become bound by the amount stated in the face of the note and could not go back of that to introduce credits which he claims should have been made. In this case the note was not executed until some three weeks after he claims he was entitled to the credit. In other words, that note had not been given and the contract made at the time he claims this $60 credit. Consequently, they would be entitled to recover the balance due on the note, which is $276 with interest at 8 per cent. from April 2nd, 1940.'' The facts stated in this direction of the court conformed to the undisputed testimony.

It is not contended that any fraud or deception was practiced upon Broyles to induce him to execute the note or sales contract. The contention is that the correct balance due on the contract was $60 less than the contract recites, and the case of *Boone* v. *Goodlett & Co.*, 71 Ark. 577, 76 S. W. 1059, is cited to sustain that contention. But here there is no mistake as to the sale price of the truck, which is plainly stated to be $716, and the contract also plainly recites the disposition of the $120 check.

As we have said, the truck was treated as having been repossessed, and upon that assumption was resold

to Broyles for the credit price of $716. Payments made by Broyles reduced that amount to $276, for which amount the jury was directed to return a verdict in favor of the company, and that portion of the judgment will be affirmed.

Another defense was also interposed, concerning which the testimony must also be viewed in the light most favorable to appellant.

When Broyles bought the truck there was in force a collision insurance policy covering short hauls. Broyles began making long hauls, and it was agreed between him and the company that the policy did not cover long hauls. The premium on the short-haul policy had been paid by the company and charged into the account evidenced by the note and the resale contract, and the policy was in the possession of the company.

Broyles testified that the company's agent told him the old policy would have to be canceled before a new one would issue, and that at the direction of the company's agent and representative he wrote on the stationery of the company an order for its cancellation. Broyles testified that neither he nor the company's agent knew the premium rate for the long-haul insurance, but the agent agreed to procure the long-haul collision insurance and charge it to his account. The old policy was canceled and the short-term premium, amounting to $24 was refunded to the company, but was not credited on the note or sales contract.

Broyles began making long distance hauls, and while so engaged had a collision near Fredericktown, Missouri, on January 6, 1940, in which the truck was wrecked. Broyles called appellee company at its office in Little Rock, and was directed to salvage the truck and notify the company where it had been stored, and was told that the cost of repairs would be adjusted by mutual agreement. Broyles carried the truck to Fredericktown, and delivered it to the company's representative at that place, and when he reached Newport, where he lived, he again called appellee's Little Rock office and advised the disposition made of the truck. He was then told that

the company had neglected to procure the long-haul collision insurance. On December 16, 1939, the company wrote Broyles a letter in which the amount owed by appellant was computed without reference to any refund of the short-haul insurance premium. On January 19th, which was subsequent to the collision, the company advised that it had taken out no insurance coverage, and that it would pay no part of the cost of repairs. The company denied having made any agreement to procure the insurance, and the testimony on its behalf was to the effect that it had directed Broyles to procure the insurance at his own expense.

Without further recitation of the conflicting testimony upon this issue of fact, it may be said that the testimony offered on Broyles' behalf was to the effect that the company agreed to procure long-haul insurance, as it had previously procured the short-haul insurance, and to charge the additional premium to his account after crediting the return short-haul premium received by the company on the cancellation of that insurance and which had not been otherwise credited.

The case of *Kissire* v. *Plunkett-Jarrel Grocer Co.*, 103 Ark. 473, 145 S. W. 567, was one on which suit was brought to foreclose a mortgage on a house. The mortgagor claimed that the mortgagee had failed to obtain sufficient insurance on the house, which had burned, and for this reason the mortgagor was entitled to credit upon the note for the difference between the value of the property destroyed and the amount for which it was insured. The mortgage provided that the mortgagor and not the mortgagee should obtain and maintain insurance upon the property, but that the mortgagee might, at its option, take out insurance, but had not obligated itself to do so. It was held, under these facts, that the mortgagee was under no liability for failure to further insure the property.

Appellant insists that the facts here are similar to those in the case just referred to. If found so to be, there would be no liability, but here we have testimony which, if credited, would support the finding that appel-

lee agreed to procure long-haul insurance upon the cancellation of the short-haul policy.

In the case of *Milburn* v. *People's Building & Loan Assn.*, 106 Ark. 415, 153 S. W. 605, plaintiff loaned defendant money to erect a building, secured by a mortgage on the building, which provided that the mortgagor was to procure fire insurance, with the right of the mortgagee to do so if the mortgagor did not. The mortgagee procured insurance with a three-fourths loss clause instead of a three-fourths value clause. The property was destroyed by fire. It was held that, in the absence of an agreement between mortgagor and mortgagee as to the kind of insurance to be placed on the property, the mortgagee was entitled to recover from the mortgagor the amount of the loan not realized from the insurance; in other words, was not responsible for the kind of insurance taken.

The question of the duty of the lienholder to procure insurance is the subject of an extensive note to the annotated case of *Rheuban* v. *Commercial Investment Trust*, 81 N. H. 498, 128 Atl. 807, 41 A. L. R. 1280. Several of the cases there reviewed arose upon conditional sales with reservation of title. The annotator sums up his review of these cases with this statement: "The effect of the decisions is to uphold the proposition that a mortgagee who has agreed to place insurance on the mortgaged property must act in good faith, and must use reasonable care, and this notwithstanding the fact that the mortgage contains a covenant by the mortgagor to insure for the benefit of the mortgagee," and is responsible for the failure to perform this agreement.

We conclude, therefore, that the testimony requires the submission of the question to the jury whether the company, upon the cancellation of the short-haul policy, agreed to procure long-haul collision insurance, and the judgment will be reversed, and the cause remanded with directions to submit that issue to the jury.