DERBY *v.* BLANKENSHIP.

4-9160                                    230 S. W. 2d 481

Opinion delivered May 8, 1950.

Rehearing denied June 26, 1950.

*Aubert Martin, C. C. Hollensworth* and *Wilson, Kimpel & Nobles,* for appellant.

*Warren E. Wood* and *Griffin Smith, Jr.,* for appellee.

LEFLAR, J.   This action was brought by plaintiff Blankenship, a sawmill operator, against defendant Derby, a general insurance agent, on account of the latter's failure to secure for Blankenship a policy of workmen's compensation insurance on his sawmill employees.   One of plaintiff's sawmill employees was killed in the course of his employment and plaintiff personally is paying workmen's compensation benefits to the widow and children, under a Workmen's Compensation Commission order.   At the time of trial plaintiff had paid $1,112 in compensation benefits, and judgment was rendered for plaintiff on a jury verdict in that amount, with the understanding that further sums later paid out by plaintiff under the order might be recovered subsequently.   The defendant insurance agent appeals from that judgment.

Initially, defendant filed a general demurrer to the complaint, which demurrer was overruled by the Circuit Judge. This is the first point on which defendant appeals.

The complaint alleged that defendant Derby represented at Warren, Ark., a number of insurance corporations which were in the business of writing various kinds of insurance policies, including workmen's compensation insurance, and that on July 22, 1948, the plaintiff and defendant agreed at the defendant's office in Warren that defendant would provide such insurance covering employees on plaintiff's sawmill operations, plaintiff then paying defendant $262.50 as a deposit on the premium. One allegation in the complaint was that an oral contract was made whereby the insurance was to be in effect at once, but there was an alternative allegation which may be construed as asserting that there was a contract by defendant to proceed diligently to secure an appropriate insurance contract for plaintiff's benefit. The complaint further set out the injury of a sawmill operative in the course of employment on Aug. 13, 1948, his death on the following day, the fact that the operative left surviving him a widow and nine children, due notice to defendant of the death and related facts, and payments by plaintiff to the survivors in accordance with the workmen's compensation law.

We cannot agree that this complaint failed to set out a cause of action. Either of the types of contract alternatively alleged in the complaint might have existed, and there would certainly be nothing illegal about either of them. Whether either of the alleged contracts did come into existence, and whether there was then a breach of it by defendant, were questions properly left for determination on the evidence submitted by the parties.

Appellant argues impropriety in the granting and refusal of several instructions to the jury. Chief among these was plaintiff's instruction 1-A, given by the court over defendant's objection. This instruction was:

"You are instructed that where an insurance agent undertakes to procure a policy of insurance for another, affording protection against a designated risk, the law imposes upon him the duty, in the exercise of reasonable care, to perform the obligation that he has assumed, and within the amount of the proposed policy, the agent may be held liable for any loss suffered by the applicant attributable to his failure to provide such insurance. In this case, if you believe from a preponderance of the evidence that the defendant Derby contracted with the plaintiff to obtain workmen's compensation insurance, covering sawmill and logging operations, and that he, Derby, failed to exercise ordinary care or diligence in his efforts to provide said insurance in accordance with his agreement with plaintiff, or if Derby exercised ordinary care and diligence, but failed to seasonably notify plaintiff of his inability to obtain such insurance, your verdict will be for the plaintiff."

This instruction was admittedly based upon *Feldmeyer* v. *Engelhart*, 54 S. Dak. 81, 222 N. W. 598, in which a similar instruction was sustained. Defendant contends the instruction was necessarily bad because it spoke to the jury in the languages of both contract and tort; a combination which, it is insisted, could not lawfully be urged in a single claim. The answer to this contention lies in the terms of the contract as they were discovered to exist.

"The . . . question, then, is : What duty did the defendant owe to the plaintiff under the contract so made? . . . The relation created . . . constituted the defendant an insurance broker, and as such he undertook to use reasonable diligence to get the property insured; that is, upon the facts of this case, he undertook to have the property rated and to take all other steps necessary to authorize him to write the policy, and in the event of his being unable to protect the plaintiff's property by insurance, then seasonably to notify the plaintiff of his inability so to do, which time, however, did not begin to run until he had had a reasonable time in which to ascertain, by the exercise of ordinary

diligence, whether he could place the insurance.'' *Russell* v. *O'Connor,* 120 Minn. 66, 139 N. W. 148 (building destroyed by fire seven days after oral contract to procure fire insurance.) A contract requiring, either expressly or by inference, that a party use in a given transaction the same standard of care as is fixed by the law of Torts is altogether valid and permissible.

Once it is concluded that there may be a contract to employ due care and diligence in the procurement of a policy of insurance, and that such a contract comes within the allegations of the complaint in the present case, there can be no serious objection to the wording of the instruction quoted. The instruction would be clearer if the word ''seasonably'' were changed to ''within a reasonable time after failing to secure the insurance,'' but we cannot say that there was reversible error on the facts of this case in not using the clearer language. The great weight of judicial authority in America permits recoveries against insurance brokers under such circumstances. *Burroughs* v. *Bunch* (Tex. Civ. App.), 210 S. W. 2d 211; *Rezac* v. *Zima,* 96 Kans. 752, 153 Pac. 500, Ann. Cas. 1918B 1035; *Gay* v. *Lavina State Bank,* 61 Mont. 449, 202 Pac. 753, 18 A. L. R. 1204; *Elam* v. *Smithdeal Realty & Ins. Co.,* 182 N. C. 599, 109 S. E. 632, 18 A. L. R. 1210; 2 Couch, Insurance, § 468 (p. 1329); 16 Appleman, Insurance, § 8841 (p. 300). We hold that the giving of plaintiff's instruction 1-A was not reversible error.

The next point urged by appellant, in respect to the instructions, is the trial judge's refusal to direct a verdict for defendant. This presents the question whether there was any substantial evidence given that can sustain the jury's verdict for the plaintiff. Such evidence would have to support the findings (1) that there was a contract between plaintiff and defendant, and (2) that defendant broke this contract. If these two facts be established, plaintiff's damages and consequent right to recover are clear enough.

Defendant himself was asked: ''Did you enter into a contract with the applicant to undertake to place this

insurance?'' His answer was: ''I don't know—yes, it might be a verbal contract that I would endeavor to place it for him. I don't know if you would call it a contract or not, but that was our understanding on it.''

Plaintiff testified: ''I said, 'What's the deposit?' He (defendant Derby) said, 'It will figure around $262.50,' and I told him to write me out a check and he wrote out the check for $262.50 and I signed it and handed the check to him. (This was on July 22, 1948.) . . . He assured me that he wrote it (this kind of insurance) and it was an assigned risk—in other words, I was taken care of when I signed that check and gave it to him . . . I told him that I wanted to start (sawmill operations) in the next few days, didn't want to take a man until the Workmen's Compensation insurance started . . . I thought the man knew what he was doing and I was influenced by them accepting my check . . . I thought I was taken care of and everything under those conditions.''

In the light of this and other corroborating testimony we cannot say that there was no evidence from which a jury could find that there was at least a contract under which defendant bound himself to exercise ordinary care and diligence to effect workmen's compensation insurance for plaintiff and to notify plaintiff if he should be unable to effect it in a reasonable time.

Was there substantial evidence that defendant failed to live up to such a contract?

The plaintiff's own testimony was that he heard no more about the matter after July 22 until he reported the August 13 accident to Derby on the day it happened, and was told by Derby that he had no insurance.

Derby and his secretary both testified that on August 5 they wrote and mailed to plaintiff a letter telling him that they had not yet been able to place his insurance. Plaintiff testified that he never received such a letter. The judge instructed the jury that if they believed Derby had mailed this letter to plaintiff Blankenship as

he and his secretary testified, "then the Court tells you that notice of the fact he had no insurance as of this date will be imputed to Blankenship." The jury found for plaintiff in the face of this instruction, therefore presumably disbelieved the defendant's evidence. This was their privilege.

The defendant's other evidence, which was lengthy, detailed his efforts to secure the insurance for plaintiff. That he made efforts to place insurance on plaintiff's operations is undeniable; that he might reasonably have been more diligent is also undeniable. Whether he exercised the care and diligence that his undertaking with plaintiff called for was a question of fact which, we have concluded, was properly left to the jury. No cases exactly like this have heretofore arisen in Arkansas, but in the case most nearly like it, *Broyles* v. *International Harvester Co.*, 202 Ark. 267, 150 S. W. 2d 733, we held that the evidence required submission to the jury of the similar question there presented.

Appellant also complains of the Circuit Judge's refusal to give numerous other instructions requested by him. We have examined all these proposed instructions carefully, and find that the matter in them was covered by other instructions given by the court, or that they were improper. It would not be profitable for us to set each of them out for detailed discussion.

Finally, defendants urge that the burden imposed upon insurance brokers by the rule we here apply will be an intolerable one, that insurance men will be unbearably hampered by it in their business. Other states have not found this to be so. A clear agreement, preferably in writing, as to when insurance is to be effective, or as to what obligation is to be undertaken by the broker, should be no burden, but should rather be an aid to good business. There should be no vested right to engage in ambiguous undertakings. Insurance brokers may often find it advantageous to enter into the type of contract which we here enforce. If they wish a different type of contract they are free to make it.

No complaint is made as to the measure of damages employed in the trial below, but we point out that defendant will be entitled to deduct the amount plaintiff would have had to pay as a premium on the policy contracted for from whatever total defendant must pay to plaintiff as a consequence of this judgment. The deduction should be the amount which the plaintiff would actually have paid as a premium on the policy applied for, covering his employees for a period of one year, had the policy been issued. Plaintiff is entitled to no more than the net amount in which he is harmed by defendant's breach of contract.

The judgment of the Circuit Court is affirmed subject to this modification, and the case is remanded accordingly.

Chief Justice GRIFFIN SMITH disqualified and not participating.