PROVIDENCE WASHINGTON INSURANCE COMPANY v. ARKANSAS FARM BUREAU FINANCE COMPANY, INC.

4-9915                                          253 S. W. 2d 226

Opinion delivered December 8, 1952.

*Vol T. Lindsey,* for appellant.

*Clifton Wade, Russell Elrod, A. D. McAllister, Jr., Clayton N. Little* and *William H. Enfield,* for appellee.

ED F. McFADDIN, Justice. This is a ''four-cornered'' lawsuit. As hereinafter referred to: (1) ''Smith'' is W. L. Smith, a resident of Benton County, and engaged in the growing of chickens for the commercial broiler market. (2) ''Bureau'' is the Benton County Farm Bureau Association (Inc.), of Rogers, Arkansas, and engaged in furnishing feed, etc. to persons such as Smith, and also engaged in acting as the agent of Finance Company. (3) ''Finance Company'' is the Arkansas Farm Bureau Finance Company, Inc., with its home office in Little Rock and a branch office in Fayetteville, and engaged in financing persons such as Smith. (4) ''Insurance Company'' is the Providence Washington Insurance Company, of Providence, Rhode Island, and engaged in the fire insurance business in this State.

In October, 1947, Smith had 5,000 chickens which he was growing for the broiler market. He had been buying his feed and other supplies from Lester Glover, but decided to give his business to Bureau. Bureau had a contract with Finance Company, to act as its agent in obtaining persons to be financed, so that Finance Company would pay Bureau for the feed, etc. that such persons received. Accordingly, on October 23, 1947, Bureau required Smith to execute a note for $3,300, and a chattel mortgage on his said chickens. Bureau sent the note and mortgage to Finance Company, which had the mortgage filed in the Circuit Clerk's Office of the County. Included in the note was the amount of fire insurance premium on Smith's chickens. The payee in the said $3,300 note and the grantee in the said chattel mortgage, executed by Smith, was not Bureau, but was Finance Company, because Bureau and Finance Company had the relationship previously mentioned.

From October 23rd until December 20th, Bureau furnished feed and supplies to Smith in the amount of $2,046.97. On November 25, 1947, Finance Company notified Bureau that Finance Company would not accept

the Smith note and mortgage and, therefore, would not reimburse Bureau for any past or future advances Bureau made, or might make, to Smith. Neither Finance Company nor Bureau ever informed Smith of Finance Company's rejection of the note and mortgage: on the contrary, the note and mortgage were retained by Finance Company, and Bureau continued to furnish Smith with feed and supplies up to December 20th.

Finance Company had a floater insurance policy with the Insurance Company, with the premium computed and paid on a monthly reporting basis. This was not a "name by name" report, but only a gross volume report, so that the Insurance Company had no way of knowing which individual grower's chickens were insured by the premiums so remitted. Finance Company did not include any part of the Smith note and indebtedness in the report to the Insurance Company for the October business or the November business; and it was not until Finance Company's remittance of January 21, 1948, that Finance Company attempted to remit any premium for insurance coverage on Smith's chickens.

On December 20, 1947, 3,100 of Smith's chickens were destroyed by fire; and this lawsuit ensued. The parties and their claims were as follows:

(a) Bureau sued Smith for $2,046.97 for feed and supplies furnished him; and in the same suit, Bureau also sued Finance Company for $2,046.97, alleging that Finance Company had agreed to obtain insurance for Bureau on the Smith chickens and that Finance Company's rejection of the Smith note and mortgage was ineffectual.

(b) Smith answered the Bureau complaint by cross-complaining against Bureau, and also suing Finance Company; and claiming that Bureau, for itself and as agent of Finance Company, had promised to obtain fire insurance on Smith's chickens, and that neither Bureau nor Finance Company had ever notified Smith to the contrary.

(c) Finance Company denied all liability to Bureau and to Smith, stating that Finance Company had

rejected Smith's loan and had so notified Bureau, and that such rejection and notice to Bureau terminated any possible liability of Finance Company to Smith or to Bureau, insofar as insurance coverage was concerned. But Finance Company also cross-complained against the Insurance Company, claiming that Finance Company had an omnibus coverage policy with Insurance Company which insured Finance Company against loss by fire occurring to the property of anyone indebted to Finance Company, if such account had been duly reported, and that Finance Company had reported the Smith indebtedness on January 21, 1948.

(d) The Insurance Company denied all liability to Finance Company: stating that the first attempt of Finance Company to pay any premium on the Smith account was on January 21, 1948, which was more than a month after the fire loss; and that the Insurance Company had denied liability on the Smith fire shortly after the fire and long before January 21, 1948.

On the issues made by the pleadings, all four parties introduced evidence to a jury. It developed in the proof that Lester Glover, who had furnished feed, etc. to Smith prior to Smith's dealings with Bureau, had some insurance on Smith's chickens, and that the amount of this insurance reduced Smith's net loss to $1,029. The jury returned three verdicts:

(1) In favor of Bureau against Smith for $1,029.

(2) In favor of Smith against Finance Company for $1,029.

(3) In favor of Finance Company against Insurance Company for $1,029.

The net result of the three verdicts was that the Insurance Company was cast for $1,029. The Insurance Company filed its motion for new trial and has appealed from the order overruling same. Likewise, Finance Company filed its motion for new trial, insofar as the judgment of Smith against Finance Company was concerned, and has appealed from the order overruling said motion.

I. *The Judgment of Bureau Against Smith.* Smith has not appealed from that judgment, so it need not be discussed.

II. *The Judgment of Smith Against The Finance Company.* The Finance Company has appealed from this judgment and claims:

". . . there was not any evidence to justify the submission of the matter to the jury, and that the lower court erred in allowing the issue to go to the jury . . ." In view of the fact that the jury reached a verdict in favor of Smith, we review the evidence most favorable to support the verdict.[1] So reviewed, the evidence discloses: that Finance Company had a written contract appointing Bureau as its agent; that the manager of Bureau went to Fayetteville where the Smith note and mortgage were prepared by Finance Company; that the manager of Bureau then had Smith execute the note and mortgage, which were immediately sent by Bureau to Finance Company; that Finance Company had the mortgage duly filed in the Circuit Clerk's Office to complete the lien on Smith's chickens; that Bureau, as agent of Finance Company, told Smith that the note included the fire insurance premium on his chickens; that prior to December 20th (the date of the fire) Smith was never notified that Finance Company had rejected his note; that Finance Company at all times retained the Smith note and mortgage; and that Bureau continued to furnish feed, etc. to Smith from the date of the note (October 23rd) until the date of the fire (December 20th).

With these facts established by the evidence, we hold that a case was made for the jury by Smith. Since the Bureau was the agent of the Finance Company, the latter must be held responsible for the failure of its agent to notify Smith that his note and mortgage had been rejected. Since Smith was continuing to receive feed, etc. from Bureau because he had executed the note and mortgage, he had a right to believe that Finance Company, as mortgagee, had acted in good faith and

[1] See cases collected in West's Arkansas Digest "Appeal & Error", § 930.

used reasonable care in effecting insurance coverage. That the Finance Company could have obtained such insurance by the exercise of reasonable care, is demonstrated by the fact that the Finance Company did have an insurance policy covering any accounts that it might report.

In several of our cases, the mortgagee had the *right* but not the *duty* to obtain insurance, and under such situations, we logically held that the mortgagee, *being under no obligation to obtain such insurance,* could not be held liable for the failure to obtain it. Some such cases are *Milburn* v. *Peoples B. & L. Assn.,* 106 Ark. 415, 153 S. W. 605; and *Kissire* v. *Plunkett-Jarrell Gro. Co.,* 103 Ark. 473, 145 S. W. 567. But these cases inferentially recognize that if the mortgagee had *agreed* to obtain insurance, then the breach of such an agreement would entitle the mortgagor to redress.

In *Broyles* v. *International Harvester Co.,* 202 Ark. 267, 150 S. W. 2d 733, and again in *Derby* v. *Blankenship,* 217 Ark. 272, 230 S. W. 2d 481, we recognized that an oral agreement to obtain insurance was valid and the breach of such agreement would afford redress in the courts. In 36 Am. Jur. 852, the holdings from the various jurisdictions are summarized:

"A mortgagee who agrees to place insurance on the mortgaged property has been held liable as an insurer for failure to execute his agreement properly, that is, in good faith and with reasonable care."

Supporting the foregoing statement are the two Annotations, being 41 A.L.R. 1283 and 130 A.L.R. 598; and in the first mentioned Annotation, the holdings are summarized:

"The effect of the decisions is to uphold the proposition that a mortgagee who has agreed to place insurance on the mortgaged property must act in good faith, and must use reasonable care, . . ."

The execution of the note and mortgage by Smith to the Finance Company furnished the consideration to support the oral promise to insure as made by Bureau,

Finance Company's agent, to Smith. So we affirm the verdict and judgment for Smith against the Finance Company.

III. *The Judgment of Finance Company Against the Insurance Company.* The Insurance Company was entitled to an instructed verdict in its favor. The policy issued by the Insurance Company to the Finance Company provided, as one of the conditions for insurance coverage, that the Finance Company agreed ". . . to keep an accurate itemized record showing all property insured hereunder and to pay premiums monthly at the rate of 65¢[2] per $100 per month on the unpaid balance, as of the last day of each month, and to report such values to this company[3] not later than the 15th day of the following month."

The undisputed evidence shows that at no time prior to the fire did the Finance Company enter the Smith note and mortgage on its books, so, therefore, the Finance Company did not include the Smith account in the "accurate itemized record showing all property insured." Likewise, the undisputed evidence shows that at no time prior to the fire did the Finance Company report to the Insurance Company anything about the Smith note and mortgage, or tender to the Insurance Company any premium so as to make the insurance binding on the Smith property. If the fire had occurred, say, on October 29th—which was in the month in which the account arose—then there might be a real question as to insurance coverage, but that situation is not before us.

From October 23rd to November 25th, the Finance Company received in its day by day reports from the Bureau (covering furnishings made by Bureau on notes held by Finance) regular reports of furnishings made to Smith; yet in neither the October nor November report to the Insurance Company, did the Finance Company include anything about the Smith account, and

---

[2] By endorsement on the policy, this was subsequently changed to 60¢.

[3] That is, the Insurance Company.

prior to the fire made no payment of any premium on that account. It is, therefore, clear that at the time of the fire, the Finance Company had no insurance on the Smith property.

We consider, next, what happened *after* the fire, which might effectuate insurance on property already destroyed. The testimony shows that a day or two after the fire, Bureau reported the Smith loss to an adjuster for the Insurance Company, and such adjuster promptly denied liability, since there had been no insurance. Then Finance Company discussed the Smith loss with the local Fayetteville Agent for the Insurance Company, and Finance Company claims that such agent told Finance Company to include the Smith premium in the Finance Company's report to the Insurance Company for December (to be made January 15th) and see if the Insurance Company would admit liability on the Smith loss. The Finance Company lays great stress on this remark of the local agent. But such statement of the local agent was not an admission of liability that would bind the Insurance Company, even assuming that the local agent had power and authority to bind the Company (which point is not decided): rather, the statement of the local agent was a suggestion as to possible procedure that the Finance Company might use to see if the Insurance Company would admit liability.

The Finance Company waited until January 21st, and then in the monthly report for December, included a premium of $14.21 on the Smith account for December. This was in a gross amount of $425.76 and without reference to any name or note maker. As soon as the Insurance Company learned that the Finance Company was trying to include the Smith item, the Insurance Company promptly denied liability. Our case of *American Ins. Co. v. Russell,* 183 Ark. 285, 35 S. W. 2d 1014, was an attempt by an insured to remit a premium *after* the fire, and in refusing relief to the insured, this Court held that acceptance of a past due premium after loss without knowledge of the loss did not revive a previously forfeited policy. The rationale of that holding

as applied to the case at bar is that the Insurance Company is not bound for a loss occurring before the property was ever reported when the Insurance Company did not know that a tendered premium was included in a gross sum.

The Finance Company claims that the following language in the policy gives the Finance Company 90 days in which to list the report of the Smith note and mortgage:

"If, at any time during the term of this policy for a period of more than 90 days, the assured shall fail to make declaration of amounts as required herein, this insurance shall forthwith become suspended and shall be of no force or effect until reports shall have been delivered by the assured to the Company or its authorized representative; . . ."

This quoted language refers to the effect of an entire failure of the Finance Company to make any report for a period of 90 days. It does not extend for 90 days the duty imposed on the Finance Company to make a monthly report. The quoted language is a restriction on liability and not an extension for reporting.

Finally, the Finance Company says that the insurance policy here involved was ambiguous and therefore the question of coverage should have been submitted to the jury. We find no such ambiguity in the policy, as Finance Company claims. The policy covered only items that were duly reported, and the Smith account was never reported until after the fire, and that was too late. Furthermore there was no admission of liability.

## Conclusion

The Circuit Court judgment for Smith against the Finance Company is in all things affirmed, and in addition, Smith will recover all his appeal costs from Finance Company.

The judgment of Finance Company against the Insurance Company is reversed and such cause is remanded, with instructions for the Trial Court to dismiss

the claim of *Finance Company* v. *Insurance Company,* and award the Insurance Company all its costs to be recovered from Finance Company.