JIMMY HARVEY ET AL v. WORTHEN BANK & TRUST Co.

5-4951                                          440 S.W. 2d 547

Opinion Delivered May 12, 1969
[Rehearing denied June 9, 1969.]

*Howell, Price & Worsham* for appellants.

*Wright, Lindsey & Jennings* for appellee.

GEORGE ROSE SMITH, Justice.    More than a year after the three appellants bought a Dodge car from an automobile dealer the vehicle was heavily damaged in a collision.    The purchasers then learned that the collision insurance upon the car, which had been cancelled by the insurance company several months earlier, had not been replaced.    Upon being sued for the balance due on the conditional sales contract the purchasers filed a cross complaint against the appellee, Worthen Bank & Trust Company, asserting that the bank, which had financed the sale, had been at fault in failing to obtain a substitute policy of collision insurance when the first one was cancelled.    This appeal is from a judgment sustaining a demurrer to the cross complaint and dismissing it.

The essential facts are simple.    The appellants bought the car from Bevis Dodge on April 12, 1966, executing a conditional sales contract for a deferred balance of $3,600.36, payable in 36 monthly installments.    That balance included a charge of $323.00 for insurance on the car.    The contract also contained this paragraph relating to insurance:

> Any sums spent by seller for insurance or taxes on the purchased property . . . will be repayable by buyer (with interest on each expenditure from the date thereof at 6% per annum) ; which reimbursable items will be added to and constitute a part of the Deferred Balance.    If requested by seller, buyer will carry insurance upon said property for the full insurance value thereof the policy or policies (showing loss payable to seller as its interest may appear)

to be delivered to and held by seller; and seller may apply any insurance proceeds upon the amount then owing hereunder in inverse order of maturity.

The contract, which was on the bank's printed form, was assigned to the bank by Bevis Dodge, with recourse. On December 2, 1966, the collision insurer cancelled its policy for an undisclosed reason and sent the unearned premium of $238.60 to the bank. The bank simply held the money, making no attempt either to obtain substitute insurance or to pay the money to the purchasers. The car was damaged in a collision on May 19, 1967. On July 26, 1967, the bank applied the refunded premium to the principal debt and reassigned the contract to Bevis Dodge, who sold the car for salvage and brought this action for the unpaid balance of $1,670.44. The purchasers admitted, for the purposes of the demurrer to their cross complaint, that they knew of the cancellation of the policy and made no demand upon the bank to refund the premium or to purchase new insurance.

Counsel for the bank, citing *Providence Wash. Ins. Co.* v. *Ark. Farm Bureau Finance Co.*, 221 Ark. 327, 253 S.W. 2d 226 (1952), insist that although the bank had the right to obtain insurance on the car it was under no duty to do so. Hence it is argued that the purchasers' cross complaint did not state a cause of action.

That argument is not sound when, as here, the buyer's obligation includes the full amount of the insurance premium for the entire term of the contract. The point was decided in *Dahlhjelm Garages* v. *Mercantile Title Ins. Co.*, 149 Wash. 184, 270 P. 434 (1928), in this language:

The second objection is that the contract does not impose a mandatory duty to keep the automobile insured against injury by collision upon the appellant or its assignors. This objection has its foundation in the language used in the quoted part

of the contract. It will be noticed that the language is that the seller may keep the automobile insured, not that it must do so. But it will be remembered that the seller exacted and was paid, in addition to the purchase price of the automobile, a stated sum for the very purpose of keeping it insured. If its obligation would have been otherwise optional, it became absolute when it made this exaction.

To substantially the same effect see *Minor* v. *Universal C.I.T. Credit Corp.*, 27 Ill. App. 2d 330, 170 N.E. 2d 5 (1960); *Lirette* v. *Menard,* La. App., 20 So. 2d 382 (1945); and *Smith* v. *Hellman Motor Corp.*, 122 Misc. Rep. 422, 204 N.Y.S. 229 (1924).

The case comes to us on demurrer, with all inferences to be resolved in favor of the cross complainants. We are unwilling to say that under the affirmative allegations of the purchasers there is no issue of fact with respect to the bank's duty to obtain new insurance coverage or to afford the purchasers the opportunity of doing so.

Reversed and remanded with instructions to overrule the demurrer.

BYRD, J., dissents.

CONLEY BYRD, Justice. In disagreeing with the majority I wish to point out that I do not disagree with the authorities upon which they rely but with the majority's application of those authorities to a situation in which there is a cancellation of an insurance policy.

In *Dahlhjelm Garages* v. *Mercantile Insurance Co.*, 149 Wash. 184 (1928), the seller insisted upon placing the insurance with the finance company's related companies. The insured then pointed out that he wished coverage for the ''for hire'' use of the automobile and

that such coverage was not readily available in most companies. However the seller with this knowledge exacted the premium and did obtain coverage (apparently for a one year term) as requested by the insured. When time came, the finance company to whom the contract had been assigned purchased insurance which excluded "for hire" coverage. Under those circumstances I will agree that the seller or lender who had collected the premium and undertook to place the insurance but did so negligently should be held to the same liability that exists in the case of an insurance agent or broker. This was the effect of the Washington decision and also the Illinois decision in *Minor* v. *Universal C.I.T. Credit Corp.*, 27 Ill. App. 2d 330 (1960).

The foregoing situation, however, differs greatly from the situation in which a cancellation occurs. Here it is admitted that the appellants knew of the policy cancellation and that they made no demand upon the bank to refund the premium or to purchase new insurance. The authorities generally hold that an insurance agent or broker would not be liable in the circumstances in which the bank here finds itself; see 43 Am. Jur. 2d *Insurance* § 177 and 29 A.L.R. 2d 171, 201, § 27.

The reason for not holding an insurance agent or broker liable for not procuring other insurance upon a cancellation is obvious. Cancellations come about because of an increased risk which the insurer is unwilling to carry. Such cancellations ordinarily occur as the result of the insured's own conduct. It is common knowledge that when a cancellation occurs new insurance can only be obtained at a greatly increased premium rate. In recognition of this, our legislature has provided for assigned risk plans, see Ark. Stat. Ann. § 75-1486 (Repl. 1957). Therefore the majority opinion, by holding the lender, Worthen Bank & Trust Co., liable for failure to acquire additional insurance upon the cancellation of Harvey's policy, is placing a burden upon Worthen that it did not obligate itself to undertake and holding it to a

duty greater than it would hold an insurance agent or broker under the same or similar circumstances.

As I view the record here Worthen or its assignor complied with its obligation of procuring the insurance but the policy was cancelled without any fault of Worthen. In all of the cases relied upon by the majority the lender only partially complied with its obligation by acquiring coverage for a portion of the term and liability resulted from the failure to renew or the lender's negligence in doing so. That is not the situation here.

Therefore I respectfully dissent.