Argued December 5, 1973, affirmed as modified April 11, 1974

CLEMENTS, *Respondent, v.* THORNTON ET AL, *Appellants.*

520 P2d 893

*Eldon F. Caley,* Roseburg, argued the cause for appellants. With him on the briefs were Thomas W. Kolberg, and Long, Neuner, Dole & Caley, Roseburg.

*Lynne W. McNutt,* Coos Bay, argued the cause for respondent. With him on the brief were McNutt, Gant, Ormsbee & Gardner, Coos Bay.

HOLMAN, J.

This is an action for damages for breach of an oral contract to procure and maintain insurance in force. Plaintiff claims defendants, who are independent insurance agents, agreed to keep him covered by temporary coverage through binders until permanent coverage could be obtained but failed to do so. During the time he claims he was to have been covered he had an accident in which he demolished his vehicle and suffered other losses for which he seeks reimbursement. Defendants appealed from a judgment for plaintiff entered pursuant to a jury verdict.

Because plaintiff received a verdict, the evidence must be evaluated in the light most favorable to him.

Plaintiff was employed in Pennsylvania. While there he purchased a Porsche automobile and called the defendant Thornton in Oregon to secure coverage on the vehicle. He testified he was told by Thornton that he was covered and at that time was given a policy number in the Maryland Casualty Company. Shortly thereafter he returned to his parents' home in Oregon for a Christmas vacation visit.

While plaintiff was at home, he and his father called upon Thornton. Plaintiff's father had had word from Thornton indicating he was having difficulty placing plaintiff's coverage because of plaintiff's driving record. At that time, at approximately 3:00 p.m., Thornton executed a binder in the Hartford company which stated as follows:

"PENDING ISSUANCE OF A POLICY, and in consideration of the stipulation herein contained, the Company listed below is hereby bound to the insured for a maximum of 30 days, and fewer if so stipulated under 'days effective,' from ——— A.M. P.M. (standard time) on the effective date until 12:01 A.M. (standard time) on the date of expiration. P.M.

"EFFECTIVE DATE      1/1/70
DAYS EFFECTIVE      30

"* * * * * *

"* * * In no event shall this binder continue in force beyond thirty (30) days from the effective date of this binder * * *.

"* * * * * *"

Thornton told plaintiff that if the 30-day binder expired and no insurance had been obtained he could issue another binder. However, plaintiff and Thornton agreed they would both continue to look for permanent

coverage. Plaintiff testified Thornton agreed to keep him covered until permanent insurance was secured. Thornton testified he agreed to cover plaintiff for only 30 days.

Thereafter, plaintiff returned to his work in Pennsylvania where the accident in question occurred on February 1, at 2:30 a.m. (January 31, 11:30 p.m., Pacific standard time). There was a dispute about whether the meeting and execution of the binder occurred on January 1, which was the day the binder was dated, or on January 2 and the binder misdated. The particular issue was submitted to the jury under instructions that if the document was executed January 1, there was no coverage; but if it was executed January 2, there was coverage and defendants were not liable. The jury must have found that the document was signed on January 1 because they returned a verdict for plaintiff.

Defendants contend that even if the binder was executed January 1 they were entitled to a directed verdict because as a matter of law the binder provided coverage at the time of the accident and therefore plaintiff suffered no damage. Defendants do not contend that because of the ambiguous terms of the binder and the conflicting evidence concerning what was intended by it, the trial judge should have submitted the entire issue of its coverage to the jury. Apparently, the parties agreed that the decision as to the coverage of the binder would be left to the trial judge, except the issue concerning the date the binder was signed. Defendants give the following reasons they believe there was coverage by the Hartford binder as a matter of law:

1. There was no immediate need for coverage be-

cause the plaintiff was in Oregon and the vehicle in Pennsylvania where plaintiff could not immediately drive it. Therefore, it was unlikely the parties intended the 30 days' coverage to commence the day the instrument was signed;

2. Thornton said he had agreed to give plaintiff 30 days to see if plaintiff could get coverage and there was no opportunity for plaintiff to get coverage on New Year's Day, so January 1 should be excluded from the 30 days covered by the binder;

3. Plaintiff and his father testified that Thornton said the binder would be good until the end of January;

4. The use of the word "from" in the following language, "from ———— A.M. (standard time) P.M. on the effective date of" excludes January 1, the "effective date";

5. The binder was signed 3:00 p.m., January 1, and provided that it should terminate at 12:01 a.m. If it was to have terminated at 12:01 a.m., January 31, there would be less than 30 full days of coverage. The only way it could terminate at 12:01 a.m. and give 30 days' coverage was if it was intended to terminate at 12:01 on February 1, in which case it was in effect at the time of the accident.

■■ The above reasons may be persuasive, but they do not require a finding of coverage as a matter of law. There was a basis for finding that the binder did not provide coverage on January 31 at 11:30 p.m., Pacific standard time, if, as the jury found, it was executed on the date it bore, January 1. The document

is ambiguous. The effective date was stated to be January 1. The factfinder (in this case the trial judge) could have found that the binder was intended to afford coverage for that date and provided for a maximum of 30 days' coverage. In such a case there was a basis for him to decide it was intended to expire on January 31 at 12:01 a.m. or at 3:00 p.m. and that it was not in effect at 11:30 p.m. on that date.

■ Defendants next assert that as a matter of law plaintiff failed to perform his part of the contract and they are therefore entitled to a directed verdict. The testimony is somewhat confusing, but there is evidence from which it could have been found that although both plaintiff and Thornton were to continue to search for permanent coverage, the onus was on plaintiff to do so. After plaintiff returned to the East Coast he found coverage, but did not take advantage of it because, he said, he wanted to place his coverage with defendants, if possible. Defendants take the position that because plaintiff had insurance available to him and failed to notify defendants at the end of 30 days that he had not secured coverage, he did not perform his part of the contract.

We do not construe the testimony *to require* a finding that plaintiff was obligated to take any coverage he could find or that the claimed obligation to keep plaintiff covered until permanent coverage was secured required a notification by plaintiff that he had not secured coverage elsewhere during the 30 days. We believe these were questions for the jury.

■ Defendants also contend that the trial court erred because it did not give the following instruction

on the subject of plaintiff's duty to fulfill his obligation under their oral agreement:

"If you find in this case that an agreement to procure insurance existed, that is. the parties arrived at a mutual understanding as to the terms of the contract, then you must determine whether each of the parties offered and tendered full per- formance of all of the terms of the contract on their part to be performed. Performance of a contract is the doing of all things required by the agreement in the manner agreed upon. In order for the plaintiff to recover on the contract for failure of defendants to perform, he must first establish his own per- formance according to the terms of the agreement. *If you find that the plaintiff did not perform as required by the terms of the contract, you will return your verdict for the defendants,* for a plain- tiff may not recover for a defendant's nonperform- ance if he himself has not offered or tendered full performance." (Emphasis added.)

It was not error to fail to give the instruction because it was not in the neutral form which the opinions of this court require. The following language from *Ginter v. Handy,* 244 Or 449, 419 P2d 21 (1966), is appropriate:

"* * * The trial court was not obliged to give the requested instruction regardless of the correct- ness of the law stated by the instruction because the closing clause, 'your verdict must be for the defend- ants,' destroys the neutral form that instructions should have * * *." 244 Or at 451.

Had the objectionable non-neutral material in the in- struction which we have emphasized above been deleted, the instruction would still have conveyed the necessary message.

█ The next assignment of error asserts defendants were entitled to a directed verdict because there was no consideration for defendants' promise. The evidence

indicated it was customary for an insurance agent to wait until the permanent policy was issued before billing the customer for the premium. Defendants argue that plaintiff could have secured permanent coverage on the East Coast in which case defendants would have received nothing; and, in any event, defendants received no premium from plaintiff. The jury could have found there was an implied agreement to pay premiums for the temporary coverage and that the reason plaintiff had not paid a premium was because defendants had not billed him for any charge. The issue was presented to the jury, which was told:

> "Now, it is a question of fact for you to decide whether or not these defendants, *with a view to compensation for their services by way of premiums payable, agreed to obtain and maintain the insurance,* all as alleged in the plaintiff's complaint. The plaintiff must prove this claim by a preponderance of the evidence and, if he fails to prove any part of it, then that ends your deliberations and you return your verdict for defendants." (Emphasis added.)

Defendants requested a more complete instruction on consideration, but we see nothing wrong with the way the question was presented to the jury.

Defendants moved for a directed verdict because plaintiff's proof of damages was inadequate. They argued that plaintiff must deduct from his loss the amount of the premium he would have been obligated to pay had coverage been in force and that there is insufficient evidence of what the premium would have been. The binder provided that if an accident were to occur during its temporary coverage, a full annual premium would be required. In the absence of any other testimony, it must be assumed that had another binder

or an extension been executed, it would have had the same requirement.

After defendants presented their motion for a directed verdict on this ground, plaintiff moved to reopen his case to prove the amount of premium, which motion was allowed over defendants' objection. Defendants now contend the trial court erred in allowing plaintiff to reopen his case but that, in any event, they were still entitled to their directed verdict since the evidence which was offered of what the premium would have been was inexact, uncertain, and not applicable because plaintiff's Porsche was a high-performance car and his driving record was not good.

■■ Thornton was called as a witness and testified the premium would have been in excess of $1,000, but he was not sure of the amount. Plaintiff testified that Thornton had told him originally the premium would be from $500 to $800. However, that was for a standard policy which was probably not available because of plaintiff's driving record. Defendants' attorney was called as a witness and testified that he owned a 1971 Porsche (plaintiff's was a 1970 model) which was not as high a performance vehicle as plaintiff's and on which the premium was approximately $800. Although more testimony concerning the exact amount of the premium might be desirable, we believe there was sufficient evidence of its probable amount to go to the jury. In reopening the case for the purpose of taking additional testimony the trial judge did not abuse his discretion.

■■ Defendants also excepted to the instruction on damages because the jury was not told it must deduct the annual amount of the premium from plaintiff's

gross damages. The trial court's instruction on damages was in error in that it did not so instruct the jury. We believe the law to be in accordance with the following quotation from 44 CJS 863, Insurance § 172:

> "As a general rule the liability of the agent with respect to a loss, by reason of his breach of duty, is that which would have fallen on the company had the insurance been properly effected, together with such other damages as proximately result from the breach, and less the amount of unpaid premiums or cost of the insurance." (Footnotes omitted.)

*See Derby v. Blankenship*, 217 Ark 272, 230 SW2d 481, 484 (1950). It is apparent that the jury did not deduct any amount for the premium since it returned the amount of plaintiff's prayer which encompassed no such deduction. If we reduce plaintiff's judgment by the maximum amount the evidence justifies, the amount of the judgment against defendants would be reduced $1,000. We therefore reduce plaintiff's judgment by that amount.

Defendants have two other assignments of error: one concerning the rejection of evidence offered by defendants, and the other concerning the court's allowance of an amendment to plaintiff's complaint at the time of trial. We have considered both of these assignments but believe they merit no consideration in this opinion.

The judgment of the trial court is affirmed as modified.

█ Because defendants have obtained substantial relief by their appeal, they are entitled to costs.