[Civil No. 3300. Filed November 10, 1933.]

[26 Pac. (2d) 648.]

JOHN ERNST and M. ERNST, His Wife, Appellants, v. HENRY DEISTER and MARTIN DEISTER, Copartners, Doing Business Under the Name and Style of THE FARMERS LUMBER & WRECKING CO., Appellees.

380

Messrs. O'Sullivan & Morgan and Mr. I. J. Lipsohn, for Appellants.

Mr. John C. Lee and Mr. Harold Baxter, for Appellees.

ROSS, C. J.—Henry Deister and Martin Deister, copartners, doing business under the name of the Farmers Lumber & Wrecking Co., and their assignors, furnished labor and materials to one J. W. Wilson, Jr., to construct a residence upon lot 4, Casa Bella tract, Maricopa county, and, not receiving payment therefor, a mechanic's lien was filed against said lot, which they later foreclosed. The lot was sold under such judgment of foreclosure and the plaintiffs were the purchasers at said sale. Claiming that, by virtue of said lien foreclosure, sale, and purchase, they succeeded to the rights of Wilson, they commenced this suit against John Ernst and his wife to compel them to specifically perform a contract the latter had entered into with the Union Title Insurance & Trust Company, as trustee, in words and figures as follows:

"November 17, 1930.

"Union Title Insurance & Trust Co., 144 West Washington Street, Phoenix, Arizona.

"Gentlemen: On November 10th I purchased at my mortgage foreclosure sale all of the 39 lots in Casa Bella Tract, Maricopa County, Arizona, which were included in the mortgage of A. R. Taylor and wife to me. Sheriff's Certificate of sale has been issued to me. I understand that you are now the record owner by reason of deed from Mr. Taylor to you, of all the lots which were included in my said mortgage, and that you are anxious to arrange matters so that lots, 2, 4, 6, 7, 8 & 9, in said tract can be released from the Sheriff's Certificate by the payment to me of a certain stipulated amount for each lot so released.

"This is to advise you, therefore, that we will from time to time, as requested by you in writing, assign and transfer our rights under said Sheriff's Certificate of sale, in respect to said lots 2, 4, 6, 7, 8 & 9, or any one or more of them, upon the payment to our attorney I. J. Lipsohn, of Phoenix, Arizona, for our benefit, of the sum of $760, for each and every of said lots so requested to be released from said Sheriff's Certificate of sale.

"It is expressly understood that this agreement on our part to release, as aforesaid, stands in force and effective, only during the period of five months from and after the date of this communication, and provided that at least one of said six lots shall be so paid for and released within forty five (45) days from the date hereof.

"Yours, etc.,
"JOHN ERNST and
"MRS. M. ERNST his wife."

The occasion and reason for this agreement arose out of the following facts: John Ernst, one of the defendants, who had a mortgage against the lots described in the above contract, on September 22, 1930, obtained a judgment against the mortgagors, Arthur R. and Mamie S. Taylor, and an order of foreclosure. Thereafter, on November 10, 1930, at the sheriff's sale under said foreclosure, Ernst became the purchaser of the mortgaged property and received the sheriff's certificate of sale. The Taylors under the statute had a six months' right of redemption from this sale. They · sold and transferred their right, title and interest in said lot to Wilson prior to November 17th, the date of contract above set out. Neither the Taylors nor Wilson nor the trustee redeemed from the mortgage sale, nor did they, or any of them, pay or tender to Ernst $760, or any other sum, for a release of lot 4 or any of the other desig-. nated lots within forty-five days after November 17th, or at all.

On May 19, 1931, and after the sheriff's deed had been delivered to Ernst (May 13th), the plaintiffs tendered the latter's agent the sum of $760 and demanded a deed of said lot 4. On December 9, 1931, $765, and a deed were tendered with a like demand. Ernst refused to accept the tenders, or either of them, and also to make and deliver a deed of property as demanded. Whereupon, on December 29, 1931, this suit for specific performance was commenced.

Upon the above undisputed facts the court entered judgment for the plaintiffs, and the defendants have appealed therefrom. They contend that the judgment is contrary to the law and the evidence.

The labor and material for the building were performed for and furnished to Wilson, for whose benefit it is admitted the contract of November 17th was obtained. This contract shows upon its face that the Union Title Insurance & Trust Company, trustee, was a mere optionee with the right to purchase said lot for $760 on or before forty-five days, or five months providing it had bought and paid for any one of the other lots within the forty-five days. No payment was made or tendered within the stipulated time. The rule is that time is of the essence of contracts of this kind. Pomeroy's Specific Performance of Contracts, 3d ed., p. 821, par. 387; p. 846, par. 401; 58 Corpus Juris 974–976, §§ 159, 160; pp. 1089, 1090, § 355; pp. 1095, 1096, § 366. The section last cited reads as follows:

"While an option agreement may make time expressly essential, even in the absence of such express stipulation, if the agreement is an option, the time of performance in the manner prescribed in the agreement ordinarily is regarded as essential, and performance, unless excused or waived, must be made within the time stipulated, or within valid extensions thereof. If, however, performance is made within the life of the option this is sufficient performance by plaintiff to entitle him to relief."

As is said in syllabus 4 to *Chambers* v. *Roseland,* 21 S. D. 298, 112 N. W. 148:

"A contract for the sale of real estate, which stipulates that the purchase price shall be cash, and that the sale shall be completed in 30 days, or the contract shall be forfeited, makes time of the essence, and a failure of the purchaser to pay, or offer to pay, the price within the 30 days, prevents specific performance of the contract."

The option was not extended nor the time for payment waived by Ernst, nor is there any element of estoppel in the case, no fraud, and no misrepresentation. It is not even shown that Ernst was aware the improvement was being made, or that he knew of it until June, 1931, long after it was completed. There was no giving of possession, for Wilson was on the property when the option to purchase was given to the Union Title Insurance & Trust Company. Under such facts, neither Wilson nor the trustee was in a position to ask for specific performance, and of course the court could not make a new contract for the parties. The fixing of a new time for payment would be the making of a new contract. *Clarno* v. *Grayson,* 30 Or. 111, 46 Pac. 426; *S. H. Kress & Co.* v. *Evans,* 21 Ariz. 442, 189 Pac. 625.

The plaintiffs' rights are not any better than Wilson's; at most they succeed to his rights. Whatever those rights were, they were subject to the plaintiffs' mechanic's lien and passed to plaintiffs under foreclosure sale and purchase. Such lien would not attach to any interest in said lot other than Wilson's.

In *DeMund Lumber Co.* v. *Franke,* 40 Ariz. 462, 14 Pac. (2d) 256, the lumber and material were furnished to a lessee with option to buy, and the question was whether the materialman had a right to a lien on the interest of the lessor optionor, and we said:

"It is undoubtedly the law in Arizona that only the interest of the party who causes the building to

be erected or the materials to be furnished can be ordered sold to satisfy mechanics' or materialmen's liens, and where the owner of premises has leased them, a person furnishing material or doing labor for the lessee on the premises may have a lien against the particular estate of the lessee, but can have none against the owner's estate in the property unless it appears that the lessee is actually an agent of the owner, or as a matter of law is estopped from denying such agency. Section 2020, Rev. Code 1928; *Hadley Co.* v. *Cummings,* 7 Ariz. 258, 64 Pac. 443.''

The plaintiffs' contention seems to be that to deny them the right of specific performance would be ''unjust and inequitable.'' Grant that it does result in serious loss to plaintiffs, whose fault is it? It is not Ernst's. If he is getting something for nothing, it is only because of the carelessness of those who made the improvement. They should have found out Wilson's relation or status to the property before doing the labor or furnishing material. The courts will go a long way to protect persons found in the situation of the plaintiffs, on the grounds of fraud, waiver or estoppel, or part performance, when these or any of them exist, but they cannot, and will not, make a new contract for the parties and specifically compel its performance. That is what we should have to do to sustain the plaintiffs' position.

The judgment of the lower court is reversed and the cause remanded, with directions that judgment be entered for the defendants as prayed in their answer and cross-complaint.

LOCKWOOD and McALISTER, JJ., concur.