403 P.2d 321

Richard B. ENSIGN and Elizabeth H. Ensign, husband and wife, Appellants,

v.

Helen Siebold BOHN, Appellee.*

2 CA–CIV 68.

Court of Appeals of Arizona.

June 22, 1965.

James F. Haythornewhite, Nogales, for appellants.

George W. Oglesby, Nogales, for appellee.

MOLLOY, Judge.

This is an action by an optionee seeking specific performance of an option to purchase real estate. The appeal is from a judgment rendered in favor of the defendant.

On June 17, 1959, the plaintiffs entered into a lease and option to purchase agreement with Dayton Graham and Josie McPherson Graham, husband and wife, whereby the Grahams leased to the plaintiff "all the land and real estate owned by the Lessors or either of them" lying within four certain sections of land specifically described in the instrument which are in the vicinity of Patagonia, Santa Cruz County, Arizona, with certain specific exceptions not pertinent to this appeal. The instrument specifically expressed the intent that it included "all lots owned by Lessors in—Linder Addition." By the instrument, the Lessors gave to the plaintiffs the option "during the effectiveness of this lease" to purchase all of the leased land. The lease was effective for a period of two years from the day of the lease, June 17, 1959. The agreement further provided:

> "Written notice of the exercise of said option shall be given by the Lessee by

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8023. The matter was referred to this court pursuant to § 12–120.23, A.R.S.

mailing such notice to the Lessors at Patagonia, Arizona, `* * *`"

At the time of the execution of said lease and option, one of the Lessors, Josie McPherson Graham, was the record owner of Lot 11 of the Linder Addition. However, for most of the time expiring between the year 1907 and the time of trial, Lot 11 of Linder Addition had been in the possession of one Frank Siebold, and, since his death in 1934, of his successors in interest. The defendant is the daughter of Frank Siebold and is the successor in interest to whatever title he might have had in said Lot 11.

The record title of Mrs. Graham came to her through her deceased first husband, Clyde McPherson. Record title had passed to Mr. McPherson through a 1942 deed from Richardson Real Estate, Mining and Commercial Corporation, which conveyed several tracts of land among which was "all of Linder Addition to Patagonia."

The possession of the subject Lot after the death of Frank Siebold had become confused by the fact that a fence which had enclosed this Lot had fallen down and disappeared over the years, so that cattle in the surrounding land belonging to Mrs. Graham had used the Lot for pasturage.

At the time of trial, the defendant produced tax receipts showing that taxes upon the subject Lot had been paid by Frank Siebold from 1915 to the date of his death, and that since then the taxes had been paid either by herself or her predecessors in interest.

The evidence is undisputed that the plaintiffs never gave any written notice of exercise of the option contained in the lease of June 17, 1959. They did, however, meet with the Lessors in the office of Mr. James V. Robins, a practicing lawyer in Nogales, Arizona, on or about December 7, 1960. At this time, certain verbal communications were exchanged between the plaintiffs and the Lessors. As the result of these conversations, Mrs. Graham conveyed to one of the plaintiffs [the wife] certain specifically described property lying within the area covered by the option agreement. At the same time, Mrs. Graham and the plaintiffs entered into a written agreement by which Mrs. Graham agreed to attempt to quiet her title to certain other specifically described property lying within the optioned area. As to any property as to which her title might be quieted, there was an agreement of sale at the sum of $175.00 per acre. Though the original option agreement did not express any purchase price, the plaintiffs contended that this was the sum agreed upon for all of the Graham property. This price per acre was not contested by the defendant in this action and the Statute of Frauds was not pleaded as a defense.

In neither of these written instruments of December 7, 1960, was there any mention made of Lot 11 of Linder Addition, which is the subject of this action for specific performance.

On May 22, 1961, Mrs. Graham quitclaimed whatever interest she might have in the subject Lot to the defendant. Thereafter, defendant made improvements on the Lot to the extent of approximately $2,000.00.

The lease and option agreement of the plaintiffs had been recorded prior to the execution of the quitclaim deed from Mrs. Graham to the defendant, and the plaintiffs contend, and the defendant does not deny, that if Mrs. Graham owned said Lot 11 when the option was given the defendant's ownership in Lot 11 would be subject to whatever plaintiffs' rights are under the option.

Sometime after the expiration date of the lease, the plaintiffs first made demand upon the defendant that she convey according to the option, contending that the option had been exercised by giving notice to Mrs. Graham in December of 1960. Lot 11 on the only recorded plat of Linder Addition shows it to be approximately two-thirds of one acre in size and the plaintiffs tendered to the defendant the sum of $150.00, being in excess of the proportionate amount of $175.00 per acre, as full purchase price for the Lot. Upon the defendant's refusal to convey, this action was filed on April 19, 1962.

In their complaint, the plaintiffs alleged that they gave notice of the exercise of the option of June 17, 1959 as to the subject property as "required therein." In her answer, the defendant denied this, for lack of information.

In her answer, the defendant alleged that she was the owner of the subject Lot, but no counterclaim to quiet title was filed. In her pretrial memorandum, the defendant indicated that she claimed title to the property under a lost deed alleged to have been executed sometime around the year 1911 by one R. R. Richardson, who was the grantor of the subject Lot to the same Richardson Real Estate, Mining and Commercial Corporation, a predecessor in interest under the plaintiffs' chain of title. The defendant testified that this deed had been lost after delivery to Mr. Robins at the time he was probating her father's estate. The testimony as to the existence of such a deed was fairly definite, both from the defendant and from her sister, but the testimony as to whether there was delivery of the deed and whether there was a notarial acknowledgment thereon was indefinite.

At the conclusion of the trial to the court without a jury, judgment was entered for the defendant. There were no findings of fact or conclusions of law.

On appeal, the plaintiffs contend that there was insufficient evidence to establish a lost deed, that the court erred in admitting the depositions of two witnesses, and that under the undisputed evidence the plaintiffs were entitled to a judgment of specific performance.

The defendant in her answering brief does not rely upon the lost deed nor upon adverse possession but contends that under the undisputed evidence the plaintiffs did not exercise their option as required by the terms thereof and that under the circumstances of this case it would be inequitable to grant specific performance.

The court agrees with both contentions of the defendant and therefore will not deal with the problem of whether there was suffi-cient evidence to establish the lost deed or whether the admission of the depositions was erroneous. In the latter regard, there was no testimony in these depositions which in any way adds or detracts from the facts which the court holds are dispositive of this appeal.

By its very nature, an option is an instrument as to which time is of the essence. Ernst v. Deister, 42 Ariz. 379, 26 P. 2d 648 [1933]. By the terms of the option granted, it had to be exercised on or before June 17, 1961. By the express terms of the option, it required written notification of exercise thereof to the optionors at Patagonia, Arizona. This express requirement was never met by the optionees. If an option expresses the manner in which the exercise thereof is to be made, the optionee must comply therewith in order to cause a contract of purchase to come into existence. 17 C.J.S. Contracts § 42, p. 680; 91 C.J.S. Vendor and Purchaser § 10, p. 856; Union Interchange, Inc. v. Sierota, 144 Colo. 293, 355 P.2d 1089 [1960]; Wheeling, O. & E. R. Co. v. Wheeling Coal R. Co., 94 W.Va. 536, 119 S.E. 551 [W.Va.1923].

The plaintiffs do not call the attention of the court to any conduct on the part of Mrs. Graham or of the defendant by which this requirement was either waived, or the optionor or the defendant estopped to assert its requirement. Moreover, there is a definite question in the record as to whether the plaintiffs even verbally gave unequivocal notice of an exercise of an option to purchase this particular property. While the plaintiff-husband testified that verbal notice was given that all property owned by Mrs. Graham included within the agreement of June 17, 1959, was being purchased, there is no corroboration of this from any disinterested source. The written documents executed on December 7, 1960, would seem to indicate that this particular Lot was intentionally omitted from the property as to which the plaintiffs were exercising an option. If the plaintiffs were exercising an option as to this property, it would have been most natural to include it within the

agreement made requiring Mrs. Graham to bring a quiet title action to certain properties and binding the parties to a purchase and sale of such properties as to which her title might be quieted. Under this state of the record the trial court might have chosen to discredit the testimony of the plaintiff that a notice of exercise of option to purchase as to this particular property was given. Graham v. Vegetable Oil Products Company, 1 Ariz.App. 237, 401 P.2d 242 [1965].

█ If there is any legal theory supported by credible evidence and included within the issues framed by the pleadings supporting the judgment of the trial court, it should be affirmed. Mountain States Construction Company v. Riley, 88 Ariz. 335, 356 P.2d 648 [1960].

██ In addition to the foregoing which is sufficient support for the judgment entered, the trial court may have concluded that it would be inequitable under the peculiar circumstances of this case to grant specific performance. The payment of taxes by the defendant and her predecessors in interest for over forty-five years, the making of valuable improvements thereon, and the relative insignificance of the optioned purchase price all raise the question of whether it would be equitable to order specific performance. The granting of specific performance is never a matter of absolute right but rather a matter lying within the sound discretion of the court. Glad Tidings Church of America v. Hinkley, 71 Ariz. 306, 226 P.2d 1016 [1951].

Accordingly, the judgment of the trial court is affirmed.

KRUCKER, C. J., and RICHARD N. ROYLSTON, Superior Court Judge, concur.

Note: Judge James D. Hathaway having requested that he be relieved from consideration of this matter, Judge Richard N. Roylston was called to sit in his stead and participate in the determination of this decision.

* This appeal was filed with the Arizona Supreme Court and assigned that court's