420 P.2d 988

**J. R. WILLIAMS, Appellant,**

v.

**Robert D. NALL, Stefano Gallina, Ida Mae Camburn, and Lela Mae Nall, Appellees.**

**1 CA–CIV 271.**

Court of Appeals of Arizona.

Dec. 2, 1966.

Bill Helm, Yuma, for appellant.

Richards & Heilman, by Harlan Heilman, Yuma, for appellees.

MOLLOY, Judge.

This is an appeal from judgments rendered in plaintiffs' favor in an action arising out of a lease and sale of certain properties situate on the Colorado River, just south of the Parker Dam.

Prior to August 24, 1962, the defendant Williams and another person were the lessees of certain real property owned by the United States of America, situated between the Colorado River and State Highway 172, lying between Parker, Arizona, and the Parker Dam, on the Arizona side of the river. The possession of the property was under a land use permit from the United States of America. The agreement with the United States of America provided for an annual rental of $300. On August 24, 1962, Williams and his co-owners sold all interest in the buildings, improvements and furnishings located upon this property and subleased the real estate to the plaintiff Nall and another person. The purchase price of the chattels was $32,000, payable $6,000 down, with the balance to be paid "$288.67 per month, or more, which sum includes interest payable every other month beginning on October 24, 1962." The contract further provided:

"* * * that Buyer may compensate Seller for overdue payments within six (6) months of their due date.

"Should Buyer fail to cure said defaults within said six (6) months, Seller may retain all monies paid to him by Buyer."

There was no express provision in the contract for retention of title in the seller or for possession of the chattels on default.

Prior to the termination of this litigation in the trial court, all interest in the subject properties had been assigned to Williams by his co-owner as had the interest of Nall's co-owner been assigned to Nall, so that for the purposes of this appeal, Williams and Nall are the only parties in interest.

The written agreement between the parties provided that the seller leased to the buyer the "* * * exclusive possession * * *" of the subject real estate. The

annual rental of $300 was payable on the same date as the annual rental under the master lease with the United States Government. The seller agreed to do everything reasonable and necessary to secure an extension of the master lease and to cause same to be issued upon renewal to the buyer providing that the buyer had made payments in accordance with the agreement.

Electricity was supplied to the subject property by the Bureau of Indian Affairs, an agency of the Department of Interior of the United States of America. Under the regulations of this agency, only the lessee under the master lease was entitled to a contract for electric service. This fact was known to Williams but unknown to Nall at the time the sales contract was executed. At the time of Nall's taking possession of the subject property, Williams agreed to continue the electric contract in his name, it being understood that Nall would pay the electric bill.

There was a boat dock on the subject property, and subsequent to taking possession, Nall subleased one of the buildings upon the property and the boat dock to the plaintiff Stefano Gallina and another person, for the operation of a pizza and beer parlor, and for the sale of gasoline to itinerant boats. Subsequently, the other sublessee assigned all interest in this sublease to the plaintiff Gallina.

By a series of amended complaints, the plaintiffs charged the defendant Williams with wrongfully, willfully and maliciously causing the electric current to the subject premises to be shut off by the Bureau of Indian Affairs on June 9, 1964, for a period of three days, of doing the same thing on November 13, 1964, for approximately one month, and of dispossessing the plaintiffs from the subject property on November 17, 1964. The complaint asked for compensatory and punitive damages and for injunctive relief.

There was an answer and counterclaim. The answer was substantially a general denial. The counterclaim alleged that the written agreement " * * * provided that in the event of buyers' default, buyers should have a period of 6 months in which to cure said default," that Nall had failed to make the payment due on May 24, 1964, under the sales contract, and that Nall had made no further payments prior to the retaking of possession of the subject property on November 17, 1964. The counterclaim prayed for judgment granting defendant possession of the property and for the defendant's costs. The reply to the counterclaim denied that the contract was in default more than six months on November 17, 1964, and alleged that prior to the expiration of the six months default period, Nall had tendered payments on the agreement which were refused by the defendant.

The record discloses no pretrial order, and we assume that the case went to trial on the pleadings. The case was tried to the court without a jury, at the conclusion of which findings of fact, conclusions of law and a judgment were rendered favorable to the plaintiffs, awarding both compensatory and punitive damages and injunctive relief. The findings of the court are to the effect that Williams willfully and maliciously caused the electricity to the subject premises to be disconnected on two occasions at a time when the plaintiffs were not delinquent in payment of electric bills and that Williams wrongfully dispossessed the plaintiffs from the property in November of 1964, at a time when the plaintiffs were not in default under the written agreement with the defendant.

On appeal, Williams concedes that $1,154.63 received from Nall on May 21, 1964, paid the May 24, 1964, payment under the subject contract. With this concession, the only facts pleaded in the answer filed herein to justify the taking of possession on November 17, 1964, are negated, and judgment below is sought to be upset on other grounds.

The first attack made upon the judgment is that there being multiple delinquencies in payments under the contract, a tender made of two months payments on November 24, 1964, was inadequate, and therefore, the

court should have decreed that Williams was entitled to possession of the subject property. During the trial it was established that on November 24, 1964, Nall tendered to Williams $577.34 for the June and July payments under the contract. This money was returned to Nall, not for the reason that the amount was inadequate, but rather because the agreement between the parties had been " * * * rescinded by Mr. Nall's failure to perform * * *." The letter of rejection stated that Williams would " * * not accept .any further payments on the agreement."

■ Appellant's argument that all payments must be brought up to date under a contract such as this when making a delinquent payment is unsupported by citation of authority. However, even assuming that this contention were correct, the judgment below is supportable under the facts; and on appeal we are constrained to approve of the trial court's decision if it is supportable under any theory within the pleadings and an interpretation of the facts favorable to the judgment. Ensign v. Bohn, 1 Ariz.App. 386, 403 P.2d 321 (1965); Phelps Dodge Corp., Morenci Br. v. Industrial Com'n, 90 Ariz. 379, 368 P.2d 450 (1962).

■ The eviction of November 17, 1964, was premature under any view of the evidence. The written contract expressly gave Nall the six month grace period. The sublease gave to Nall " * * * exclusive possession * * *" of the land, and there is no contention made that payments under the real estate sublease were delinquent. Under these circumstances, the eviction and repossession was wrongful and justified a judgment for damages. 51 C.J.S. Landlord and Tenant § 320, pp. 995–996; 32 Am. Jur. Landlord and Tenant § 232, p. 215; 78 C.J.S. Sales § 514, p. 186; 77 C.J.S. Replevin § 262, p. 189.

■ Insofar as the judgment rendered below went further, and decreed Nall to be still entitled to possession, Williams' letter of rejection of the two months payments tendered in November indicates that the payment was not refused because in an inadequate amount, but because the contract had been "rescinded," a contention not supported by the undisputed facts. The letter indicates it would be futile to tender additional monies. Under these circumstances, we hold that before forfeiting Nall's interest in these chattels, Williams was required to give Nall an opportunity to cure any defect in his tender. See 6 Williston on Contracts (rev. ed. 1938 Williston & Thompson), § 1819, p. 5154 and Vol. 3, § 743, p. 2106 (1936); and National Labor Rel. Bd. v. Aluminum Wkrs. Int. Union, 230 F. 2d 515 (7th Cir. 1956).

■ Moreover, by November 24, 1964, Williams had put the plaintiffs out of business on two occasions, thus damaging the plaintiffs in some amount which may have exceeded the payments then owing and as to which the plaintiffs would have a right of recoupment for the damage done. 80 C.J.S. Set-Off and Counterclaim § 2, p. 5, and § 17, p. 28. For these reasons, we reject the contention that the lower court was required under the law to declare the plaintiffs' interest in these properties forfeited.

■■ The next attack made upon the judgment below is that the evidence is undisputed that the plaintiffs failed to pay electric bills thus justifying the disconnection of electric service by Williams. In evaluating this contention, we note first that the contract between Williams and Nall as to the furnishing of this electricity is not in writing and the tenor of the agreement is very vague in the testimony of both parties. That there was an agreement for Williams to continue the electric service in his name is undisputed. As to whether he was to have any right to terminate the service himself for a delinquency, and as to what period of time failure to pay a bill rendered would constitute a delinquency, there is no direct testimony. We believe it within the scope of the evidence for the trial court to have found that there was implied in this agreement that so long as Nall paid the electric bill within the grace periods customarily allowed by the Bureau of Indian Affairs to its customers, there

would be no right to terminate the service for delay in payment. Ensign v. Bohn, 1 Ariz.App. 386, 403 P.2d 321 (1965). And if this was the agreement, then both terminations of service were wrongful. The plaintiffs established definitely that the Bureau of Indian Affairs did not consider this account to be delinquent and did not elect to terminate service under the master service agreement at any time.

■ Moreover, the preponderance of the evidence established that there was no delinquency at all as to the electric bill when Williams ordered service terminated in June. As to any delinquency existing in November, there was evidence from which the trial court could have found that Williams prevented the payment of the electric bill by the plaintiffs, in violation of the implied terms of his contract with them to continue the electric service in his name. The evidence showed that Williams instructed the Bureau of Indian Affairs to accept no further payments from Nall or his sublessees after June, 1964; that Williams left instructions with this governmental agency not to send any bills to the possessors of this property, but to send bills to him; that Williams did not receive his mail for the next several months because he was traveling around the country; and that he made no effort to forward the bills to the occupiers of these premises. There was testimony that the delay in paying bills in the fall of 1964 was due to these actions by Williams. Williams made no demand for payment of any utility bill before ordering the service terminated in November. The judgment below is thus supported by the doctrine that one who prevents performance of a contract may not complain of such nonperformance. 17A C.J.S. Contracts § 468; 17 Am.Jur.2d Contracts § 426.

■ The last attack made upon the judgment below is that the trial court erred in denying a motion for new trial on the basis of newly discovered evidence. The "new evidence" relied upon is stated to be a letter written by Mrs. Gallina to the State Tax Commission on September 30, 1964, to the effect that the Gallinas were "* * *

quitting business." The subject motion for new trial is not verified and there is no copy of the letter attached to the motion. Neither is there any showing of diligence in attempting to secure this letter prior to the trial of the action.

■ The matter of granting a new trial for newly discovered evidence is a matter largely within the discretion of the trial court. Sabin v. Rauch, 75 Ariz. 275, 255 P.2d 206 (1953). Under the circumstances of this case, we see no abuse of discretion in denying the motion for a new trial.

The judgment of the trial court is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by section 12–120, subd. E, A.R.S.