428 P.2d 124

Vardie R. ONEY and Hazel Oney, husband and wife, Appellants,

v.

R. Neil BARNES and Doris L. Barnes, husband and wife, and United Underwriters Agency, Inc., a corporation, Appellees.

No. 2 CA–CIV 306.

Court of Appeals of Arizona.

May 26, 1967.

R. Lamar Couser, Tucson, for appellants.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Robert O. Lesher, Tucson, for appellees.

MOLLOY, Judge.

This is an appeal from a judgment rendered in favor of an insurance broker in an action brought by a property owner for damages resulting from an uninsured fire loss. The defendants are an individual broker, R. Neil Barnes and his solely owned corporation, through which he did business as an independent insurance agent, United Underwriters Agency, Inc. Vardie R. Oney, the husband of the marital community, constituting the plaintiffs, will be referred to at times herein as "the plaintiff" and Barnes, the individual defendant, will be referred to at times as "the defendant."

The plaintiffs are the owners of real property upon which is situated a home and a building used for raising chickens. The home was covered by a fire insurance policy with State Farm Insurance Company, but this company did not wish to include in its policy the risk of fire loss in connection with the chicken house. The insurance agent of State Farm called the defendant by telephone on two occasions to ascertain whether he would be able to provide insurance coverage for this building. The defendant in the first conversation stated that he would inquire as to whether this was possible, and in the second conversation stated he had been in contact with the plaintiff, Mr. Oney, that Mr. Oney was paying him a premium and that he, Barnes, " * * * would send for the policy." Both defendant and plaintiff agree that Mr. Oney came to Mr. Barnes' office on December 16, 1964, in connection with obtaining fire insurance upon the building in question and paid Mr. Barnes the sum of $56.35 " * * * for fire insurance premium." They also agree that Mr. Barnes said at that time Mr. Oney would be sent a policy " * * * within a week or ten days." The amount of the policy was to be $3500.

On December 22, 1964, Barnes submitted an application for fire insurance in this amount to the American Underwriters Agency, Inc., in Phoenix, Arizona, a "managing general agency," representing "the substandard markets." Not having heard from American Underwriters by January 9, 1965, Barnes inquired by mail as to the disposition of the application. The original computation of premium by Barnes had been made on the basis of a rate chart provided by the Arizona Fire Rating Bureau. This was done by Barnes under an "erroneous assumption that this particular underwriter or managing general agent, American Underwriters Agency, had available a given fire company who would issue this policy. As it turned out, they no longer represented that company." On a date not established by the evidence, but sometime prior to January 20, 1965, Barnes was informed by American Underwriters Agency that a policy could be secured, but a higher premium of $94 would be charged.

On January 20, 1965, Barnes mailed a "quicki-note" to Oney as follows:

"We must advise that we are unable to place the fire insurance on the chicken house at the $56.35 rate quoted. We can place the coverage but the annual premium would be $94.00. There is no coverage now, so will appreciate your early attention to this matter."

Both Mr. and Mrs. Oney denied ever having received any such communication.

On February 5, 1965, the chicken house in question was seriously damaged by fire and a claim for the loss was presented by Oney to the defendant. On February 12, 1965, the defendant tendered back to Oney the $56.35 premium received in December, informing him that insurance on the chicken house had "never attached." Barnes testified that he had no authority to bind any insurance company on a "substandard" risk such as that presented by the subject property and that he in fact did not make any oral agreement for immediate temporary insurance.

Under the foregoing facts, the appellants contend that, as a matter of law, Barnes and/or his solely owned company were liable to the plaintiffs under the contract

between them as to the securing of insurance.

■ The liability of an insurance agent or broker to his principal depends upon the nature of the contract between them. Derby v. Blankenship, 217 Ark. 272, 230 S.W.2d 481, 482 (1950). An agent may unconditionally contract to provide insurance, and if he fails to do so, the agent may be liable for the resulting loss from his breach of contract, Gothberg v. Nemerovski, 58 Ill.App.2d 372, 208 N.E.2d 12 (1965), or, the broker or agent may make himself liable under a contract requiring the agent to act in good faith and with reasonable diligence to secure insurance for his principal. Lawrence v. Francis, 223 Ark. 584, 267 S.W.2d 306 (1954); Feldmeyer v. Engelhart, 54 S.D. 81, 222 N.W. 598 (1928); Burroughs v. Bunch, 210 S.W.2d 211 (Tex.Civ.App.1948). As to this latter type of contract the agent is held liable to his principal if, on failing to secure insurance, he does not promptly notify his principal of this fact and a loss occurs which is uninsured because of such failure to notify. 3 Couch on Insurance 2d § 25:47; 44 C.J.S. Insurance § 172(a), p. 862; Anno. 29 A.L.R.2d 171, at 184–186.

■ That statutes prohibit the issuance of contracts of insurance by all but authorized insurance companies, as is the case in Arizona, A.R.S. § 20–107, is no defense to the insurance agent to liability upon his contract, whatever it may be:

"A broker or agent who has undertaken to procure insurance is liable to his principal for the damage suffered by reason of a want of valid insurance resulting from his negligence or other breach of duty in failing to secure or replace insurance in accordance with his undertaking; * * * [l]iability of the broker or agent in such cases must be predicated on his failure to procure insurance as agreed, rather than on an alleged contract of insurance made by him, where statutes prohibit the issuance of contracts of insurance by any but

authorized insurance companies." 44 C.J.S. Insurance § 172(a), pp. 861–862.

In its findings of fact in this case, the trial court found, *inter alia:*

"9. That United Underwriters did not have authority to 'bind' coverage for plaintiffs with temporary insurance pending acceptance of an application by a company, and did not represent to plaintiffs that it had such authority.

"10. That there was no intention in the parties that United Underwriters act otherwise than as an independent insurance agent to receive plaintiff's application and forward it to an insurance company for acceptance or rejection.

11. That there was no contract of insurance entered into between plaintiffs and defendant United Underwriters.

\* \* \* \* \* \*

"13. That at all times herein defendant R. Neil Barnes and defendant Doris L. Barnes acted as agents for defendant United Underwriters, a disclosed principal."

■ We must view the evidence in the light most favorable to these findings, Cagle v. Carr, 101 Ariz. 225, 418 P.2d 381 (1966), and must uphold the judgment rendered below if supported by any legal theory within the issues framed by the pleadings. Ensign v. Bohn, 1 Ariz.App. 386, 403 P.2d 321 (1965). The contract between the parties was informal and left much unsaid. The plaintiffs have the burden of proof to establish the contract sued upon, 44 C.J.S. Insurance § 172(b), p. 864. The promise that the insurance policy would be sent "in a week or ten days" must be interpreted in the light of the surrounding circumstances, General Accident Fire & Life Assur. Corp. v. Traders Furniture Co., 1 Ariz.App. 203, 401 P.2d 157 (1965), and, in the light of the circumstances here, we hold that the trial court could rightfully have interpreted the agreement as containing a proviso that there be a qualified insurance company reasonably available to the defendant which would be willing to insure plaintiffs' property for the premium

quoted. 3 Couch on Insurance 2d § 25:46, p. 353; Derby v. Blankenship, 217 Ark. 272, 230 S.W.2d 481 (1950); cf. Littell v. Republic-Franklin Ins. Co., 1 Ohio App.2d 524, 205 N.E.2d 580, 30 Ohio Ops.2d 543, 12 A.L.R.3d 1296 (1965).

Whether the defendant satisfied his contractual liability in sending the required notice of inability to procure insurance, we hold was a question of fact for the trial court under the circumstances here. Testimony that a notice has been duly mailed raises the presumption of receipt. State v. Mays, 96 Ariz. 366, 395 P.2d 719 (1964); Udall, Arizona Law of Evidence § 194, p. 434. The contrary testimony of the interested parties that they did not receive such notice is not binding upon the trier of fact. Carrasco v. Carrasco, 4 Ariz.App. 580, 422 P.2d 411 (1967). There was no contention made in the lower court that the defendant was negligent in the premises and therefore liability on a negligence theory will not be considered as a possible predicate for reversal. Scottsdale Discount Corp. v. Dodson, 4 Ariz.App. 22, 417 P.2d 535 (1966).

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.