788 P.2d 1213

**William A. ROGERS and Shirley F. Rogers, his wife, Plaintiffs/Appellees,**

v.

**Ervin FELTZ and Dorothy Feltz, his wife, Defendants/Appellants.**

No. 2 CA–CV 89–0070.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 7, 1989.

Reconsideration Denied Dec. 21, 1989.

Review Denied April 17, 1990.

Gary L. Thomas and Duane Varbel, Phoenix, for plaintiffs/appellees.

Robert F. Crawford, Scottsdale, for defendants/appellants.

## OPINION

HOWARD, Judge.

This is an appeal by appellants Ervin and Dorothy Feltz, collectively referred to as "Feltz", from a jury verdict in favor of appellees William and Shirley Rogers, collectively referred to as "Rogers", in the sum of $11,500 compensatory damages and $75,000 punitive damages. The jury also awarded Feltz $2,500 on its counterclaim against Rogers.

**1.** The lease provided that at the expiration of the first five-year period the rent for the next five

## FACTS

Prior to February 27, 1982, Feltz operated a bar and restaurant in Star Valley, Arizona, known as "Pete's Place." On that date, Feltz leased the restaurant portion of their building to Fast Foods, Inc., whose principals, Sandra Castle and Larry Majors, operated a franchised restaurant called Capt. Salty's.

On October 28, 1983, Fast Foods, Inc. sold the franchise and assigned the lease to the Rogers for $53,400. This lease was to run until March 31, 1987, with an option for a five-year extension.[1] It provided for the use of the kitchen, the kitchen equipment, cold and dry food storage areas, main dining room and one overflow dining room. Although the lease contained no provision for the use of restrooms, both parties acknowledged that the restaurant personnel and customers had the right to use the restrooms on the premises. The building contained one set of restrooms which were located in the bar area of the building. Access could be gained only from outside the building or by passing from the restaurant through the bar.

The lease contained, inter alia, the following provision:

This lease is made with the express understanding that Lessee shall conduct his business on the leased premises in a lawful manner and in a manner to complement Lessor's Bar business, and Lessee undertakes this arrangement with the understanding that he shall be enabled to operate this business *in a manner customarily permitted by hotels wherein the food department is leased out to an independent food contractor.*

(Emphasis added.)

The series of events underlying this litigation took place over a three-year period from November 1983 to November 1986. Approximately 10 to 12 weeks after Rogers assumed the lease, Feltz remodeled the overflow dining room to make it into a poolroom, thereby precluding its use by Rogers for seating restaurant customers.

years would be adjusted utilizing the Consumer Price Index.

To make up for this loss, Rogers' rent was reduced by $50 per month. There was a conflict in the evidence whether or not Rogers acquiesced or voluntarily agreed to this arrangement.

In July 1986 disputes arose as to minors from the restaurant going through the bar area through to the restrooms unaccompanied by a parent or other adult. Although Feltz would allow children of bar patrons to go to the restroom unescorted, children of the restaurant patrons were required to be escorted. There was also evidence that Feltz, as a form of harassment, would stop and "card" people who were well over age who were going to use the restrooms and would even stop restaurant patron children from going to the restroom even when a parent was with the child.

When Rogers first assumed the lease, direct access between the bar and the restaurant existed through a doorway between the two. There was also a service window at which the waiters or waitresses from the restaurant could order drinks for restaurant customers from the bartender. Likewise, the bar patrons could place an order for food with the bartender, who in turn would send the order through the service window and receive the food back for serving the bar patrons. In July 1986, Feltz sealed off the service window and the door, thus preventing restaurant customers internal access to the restrooms. After this point, no liquor was sold in the restaurant and no food from the restaurant was served in the bar area.

There was evidence that access to the restrooms, without going through the bar area, could have been accomplished by hanging a locking door to prevent access to the bar area. There were already hinges in the doorway and the door would have cost a little over $30.

The lease between the parties provided that the restaurant business could be operated in the manner customarily permitted by hotels. Feltz agreed at trial that restaurants at hotels served breakfast. However, until the bar area opened at 10 a.m., there was no access to restrooms for any breakfast customers.

In November 1986, Rogers closed the restaurant, claiming that the actions of Feltz ruined their business. However, Rogers filed his complaint in this action in May 1986. The complaint was filed as a contract action. Although one paragraph of the complaint alleges facts which would constitute a wrongful interference with the plaintiffs' use of the premises, there was no separate tort count and the case was submitted to the jury as a breach of contract action only.

## THE ISSUES

Feltz contends: (1) Rogers failed to prove any evidence of loss due to any alleged breach of the contract; (2) that the issue of punitive damages should not have been presented to the jury, and (3) that the trial court erred in rejecting certain evidence and in giving its instructions.

## DISCUSSION

■ As to the issue of compensatory damages, it was Rogers' theory that they were entitled to the sum of $55,000, the amount they alleged they paid for the restaurant business. Part of this payment was for the franchise, which Rogers still have and intend to use at a later time. Rogers presented no other evidence on the issue of compensatory damages, and Feltz contends that this was insufficient.[2] We agree.

The Restatement (Second) of Property § 10.2 (1976) sets forth what damages a tenant is entitled to recover from the landlord for the landlord's breach of the lease:

If the tenant is entitled to recover damages from the landlord for his failure to fulfill his obligations under the lease, absent a valid agreement as to the measure of damages, damages may include one or more of the following items as

2. The record shows that the Rogers' gross income increased each year, including the period

after the premises were completely divided.

may be appropriate so long as no double recovery is involved:

(1) if the tenant is entitled to terminate the lease and does so, the fair market value of the lease on the date he terminates the lease;

(2) the loss sustained by the tenant due to reasonable expenditures made by the tenant before the landlord's default which the landlord at the time the lease was made could reasonably have foreseen would be made by the tenant;

(3) if the tenant is entitled to terminate the lease and does so, reasonable relocation costs;

(4) if the lease is not terminated, reasonable additional costs of substituted premises incurred by the tenant as a result of the landlord's default while the default continues;

(5) if the use of the leased property contemplated by the parties is for business purposes, loss of anticipated business profits proven to a reasonable degree of certainty, which resulted from the landlord's default, and which the landlord at the time the lease was made could reasonably have foreseen would be caused by the default;

(6) if the tenant eliminates the default, the reasonable costs incurred by the tenant in eliminating the default; and

(7) interest on the amount recovered at the legal rate for the period appropriate under the circumstances.

As can be seen, Rogers' theory of damages does not fit under any of the above categories. Rogers have not provided us with any authority to support their theory and we know of none. Since there was no proof of compensatory damages, there could be no recovery for punitive damages. *Carter–Glogau Laboratories, Inc. v. Construction, Production & Maintenance Laborers' Local 383*, 153 Ariz. 351, 736 P.2d 1163 (App.1986).

3. See *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986), where the court discusses the type of contractual relationships from which one can recover punitive damages for breach of contract. In this regard we note that the landlord's wrongful interruption of a tenant's right

In view of the foregoing, the trial court erred in not granting Feltz' motion for directed verdict. In view of our disposition we need not discuss whether punitive damages are recoverable in an action for breach of lease.[3] Nor need we discuss any of the other issues raised by Feltz.

The jury's verdict in favor of Rogers for compensatory damages in the sum of $11,500 and for punitive damages in the sum of $75,000 is vacated and set aside, and the case is remanded to the trial judge with directions to enter a judgment notwithstanding the verdict in favor of Feltz.

In the exercise of our discretion we deny appellants' request for attorney's fees on appeal.

ROLL, P.J., and HATHAWAY, J., concur.

to peaceful possession of the premises gives rise to a tort action and therefore punitive damages. See *Williams v. Nall,* 4 Ariz.App. 416, 420 P.2d 988 (1966); and see 51C C.J.S. Landlord and Tenant §§ 319 and 320 (1968).